[No. B009759. Second Dist., Div. Two. Oct. 29, 1985.]

STEVEN V. FLOWERS, Plaintiff and Appellant, v.
STATE PERSONNEL BOARD, Defendant and Respondent.

COUNSEL

Michael P. Calof for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, Richard D. Martland, Chief Assistant Attorney General, N. Eugene Hill, Assistant Attorney General, and Melvin R. Segal, Deputy Attorney General, for Defendant and Respondent.

OPINION

**COMPTON, J.**—The Department of Corrections (Department) dismissed appellant Steven V. Flowers from his civil service position as a correctional officer at the California Rehabilitation Center (CRC). Following an administrative hearing, the State Personnel Board (Board) concurred in the factual findings and disposition of the hearing officer. Appellant then filed a petition for writ of mandate (see Code Civ. Proc., § 1094.5) in the Los Angeles Superior Court to compel his reinstatement with backpay. He appeals from the judgment denying the writ. We affirm.

In its written notice of punitive action (Gov. Code, § 19574), the Department of Corrections charged appellant with insubordination, dishonesty, and misuse of state property. (Gov. Code, § 19752, subds. (e), (f), (p).)

The evidence adduced at the administrative hearing revealed the following:

Appellant had been employed as a correctional officer for the state since December 1981, and was originally assigned to San Quentin State Prison. During his tenure at that institution, appellant was an exemplary employee with no record of disciplinary problems. In March 1983, he applied for and received a transfer to CRC's facility in Norco, California.

The allegations of misuse of state property and dishonesty arise from an incident occurring shortly after his transfer. On May 1, 1983, at approximately 11:30 p.m., appellant had completed his work shift as a dormitory officer. Accompanied by a friend and coworker, Officer David Hubbard, appellant proceeded to the pedestrian entrance to CRC ostensibly to retrieve a package containing recording equipment, allegedly delivered to that location by an unknown person. Informed that no such package had arrived, the gate officer suggested that appellant contact the women's unit gate. Declining the use of the phone, appellant and Hubbard reentered the institution, proceeded to the women's facility, and located the missing package.

Some 10 minutes later, both men returned to the pedestrian security gate, with appellant carrying the recording equipment, and attempted to leave the grounds.

The officer on duty, cognizant of the fact that a similar device had been missing from the correctional facility for several weeks, observed a sticker on the unit identifying it as state property. When questioned, appellant repeated several times that the "music box" belonged to him, that he had brought the item into the facility three days earlier, and that he was authorized to remove it from the grounds. The equipment, identified as a public address system or amplifier, was confiscated by the security officer despite appellant's protests.

Approximately four months later, on September 6, 1983, while appellant was delivering mail to the drug and substance abuse unit at CRC, two fellow officers, both familiar with the symptoms of substance abuse, suspected that appellant was under the influence of alcohol and/or drugs. They observed that his speech was slurred, his responses slow and disoriented, and his coordination poor. Some hours later, after appellant's supervisor and another investigator had been contacted, appellant, who appeared less intoxicated than before, was advised of the officers' suspicions and asked if he would submit to a urine test and/or field sobriety test. Appellant refused. Shortly thereafter, CRC's chief deputy superintendent was located and apprised of the situation. He told the senior officer present to instruct appellant to submit to a test. After appellant again refused he requested permission to phone an attorney and leave the facility. Informed that he would not be released and that it was against established policy for correctional officers to make private calls while on duty, appellant left the office and failed to return after being ordered to do so.

Later that same day, appellant and his representative did return to the supervisor's office where he was again asked to submit to a sobriety test. Following another refusal, appellant was escorted to the gate and ordered to leave the institution.

Appellant essentially testified that he had no reason to believe the amplifier was state property and that he had never represented that the equipment belonged to him. Appellant claimed that an unknown female had informed him that a package would be delivered to the facility and that he was to "pick it up" as soon as possible. He neither knew the person who delivered the amplifier nor the reason it was to be given to him. He adamantly denied being under the influence of either alcohol or drugs on September 6, 1983, and further claimed that he was never "ordered" to submit to any form of sobriety test. Several other witnesses corroborated appellant's version of

events and stated unequivocally that they had never seen him intoxicated while on duty. Appellant vigorously argued that he had been "set-up" by administration officials who, because of a hiring freeze, were anxious to terminate anyone who did not "fit in."

Based upon the foregoing, the hearing officer reached the following conclusions: "Dishonesty and misuse of State property is established in appellant's attempted theft of the amplifier. This is a cause of adverse action within the meaning of Government Code section 19752 (f) and (p). This misconduct alone is sufficient to warrant the penalty of dismissal. [¶] On September 6, 1983, appellant was insubordinate when he refused to submit to urine testing, a medical examination or the field sobriety test. Considering that respondent [CRC officials] reasonably believed that appellant was under the influence of an intoxicating substance, the request was appropriate. Considering the security interest to be protected, the testing was a reasonable means of detecting the use of an intoxicating or unlawful substance."

On this appeal, appellant first attacks the sufficiency of the evidence to support the board's findings and the resulting punitive action. His opening brief sets forth lengthy excerpts from the transcript of the administrative hearing which are used, for the most part, to emphasize inconsistencies in the testimony of various witnesses. While such conflicts no doubt exist, our function is to review errors of law and not to pass on questions of fact. ■ Factual determinations of the State Personnel Board—an agency which was created by, and derives its adjudicating power from, the state Constitution— " 'are not subject to re-examination in a trial de novo but are to be upheld by a reviewing court if they are supported by substantial evidence.' " (*Martin* v. *State Personnel Bd.* (1972) 26 Cal.App.3d 573, 577 [103 Cal.Rptr. 306].)

While reviewing the evidence placed before the board, the superior court exercises the same function as this court. (*Martin* v. *State Personnel Bd.*, *supra*; *Neely* v. *California State Personnel Bd.* (1965) 237 Cal.App.2d 487, 489 [47 Cal.Rptr. 64].) Neither court may reweigh the evidence, and we are bound to consider the facts in the light most favorable to the Board, giving it every reasonable inference and resolving all conflicts in its favor. (*Maynard* v. *State Personnel Bd.* (1977) 67 Cal.App.3d 233, 237 [136 Cal.Rptr. 503]; *Gee* v. *California State Personnel Bd.* (1970) 5 Cal.App.3d 713, 717 [85 Cal.Rptr. 762].) This court may *not* take into account evidence which detracts from the weight of other evidence, and inferences, based upon circumstantial evidence, are sufficient to support the board's findings. (*Pereyda* v. *State Personnel Board* (1971) 15 Cal.App.3d 47, 50 [92 Cal.Rptr. 746].)

■ It also is well established that an appellate court may not substitute a decision contrary to that made by the board, " ' "even though such decision is equally or more reasonable, if the determination . . . is one which could have been made by reasonable people." ' " (*Wilson* v. *State Personnel Bd.* (1976) 58 Cal.App.3d 865, 870 [130 Cal.Rptr. 292].)

■ Applying these principles to the case at bench, we can only conclude that the evidence presented at the administrative hearing more than meets the quantitative and qualitative tests of sufficiency in support of the findings and the punitive action taken. Although appellant continues to claim that he was "set-up" and that the facts establish his innocence, we are unwilling to hold, as a matter of law, that he did not attempt to steal state property or that his fabrications were not evidence of blatant dishonesty. As has been noted elsewhere, an officer's actions must be above reproach. (See *Fout* v. *State Personnel Bd.* (1982) 136 Cal.App.3d 817, 821 [186 Cal.Rptr. 452].) The facts of this case, however, disclose a course of conduct that is anything but commendable.

Much of appellant's argument is based upon the theory that the Department's witnesses should be disbelieved. ■ "Credibility, or lack thereof, is for the factfinder, not the reviewing court, to determine. The trier of fact's determination will be interfered with on appeal only when it appears that the witness' testimony is inherently so improbable as to be unworthy of belief. [Citation.] 'On the cold record a witness may be clear, concise, direct, unimpeached, uncontradicted, but on a face to face evaluation, so exude insincerity as to render his credibility factor nil. Another witness may fumble, bumble, be unsure, uncertain, contradict himself, and on the basis of a written transcript be hardly worthy of belief. But one who sees, hears, and observes him may be convinced of his honesty, his integrity, his reliability.' " (*Wilson* v. *State Personnel Bd., supra,* at p. 877-878.)

Having carefully reviewed the record, we cannot say that the testimony of any witness for the Department was so inherently improbable as to warrant disbelief. Appellant's counsel was afforded the opportunity to argue the issue of credibility to the trier of fact and point out any inconsistencies that may have come to light during the course of his cross-examination of the witnesses. Under the circumstances, we will not reconsider the hearing officer's determination on such purely factual matters.

■ Appellant further contends that he was not "insubordinate" within the meaning of section 19572, subdivision (e) because he was never "ordered" to submit to a sobriety test. In so arguing, he correctly notes that insubordination may only be founded upon proof of intentional or willful

conduct. (See *Coomes* v. *State Personnel Bd.* (1963) 215 Cal.App.2d 770, 775 [30 Cal.Rptr. 639].)

Appellant's construction of the word "order" is too technical and narrow. Although one supervising officer testified that he did not interpret his request as an order, that fact is not dispositive. Appellant was adequately informed that he was suspected of being under the influence of an intoxicating substance, but repeatedly refused to undergo a medical examination or any other form of sobriety test. Whether the officers' requests be termed "instructions" or "orders," the facts reveal that appellant intentionally and willfully disobeyed his superiors. Such disobedience supports the charge of insubordination. (Cf. *Caveness* v. *State Personnel Bd.* (1980) 113 Cal.App.3d 617, 628-629 [170 Cal.Rptr. 54].)

Appellant next argues that he was denied a fair and impartial hearing because (1) he was not given adequate notice that he was charged with "theft" of state property, and (2) he was prohibited from cross-examining one of the Department's investigators regarding "that witness' motivations and the reasons for his conclusion" that he disbelieved appellant.

■ The notice of adverse action charged appellant with dishonesty and misuse of state property based upon his attempt "to remove a state owned amplifier from the institution [CRC]." It further alleged that appellant "stated untruthfully to the gate officer that the amplifier belonged" to him. These allegations, considered together, were more than sufficient to apprise appellant of the charges against him. (Cf. *Ackerman* v. *State Personnel Bd.* (1983) 145 Cal.App.3d 395 [193 Cal.Rptr. 190].)

■ The contention that the hearing officer was somehow biased because she limited cross-examination of one witness is equally without merit. During the course of the hearing, counsel for appellant asked one of CRC's investigators why he disbelieved appellant after having interviewed him about the attempted theft of the amplifier. The hearing officer foreclosed cross-examination on this issue, concluding that it had no relevance to the proceedings. In so ruling, she emphasized that the witness' interpretation of his own investigation was immaterial because she was charged with the duty of evaluating the testimony and making an independent determination of the Department's allegations against appellant.

As we see it, the hearing officer's ruling in no way prejudiced appellant's case or resulted in a miscarriage of justice. Instead of evidencing any form of bias, the limitation placed on counsel's examination of the witness demonstrated the hearing officer's impartiality and independence. There was no abuse of discretion.

Appellant finally contends that the penalty imposed by the board was excessive as a matter of law in light of the isolated nature of the alleged misconduct and his outstanding work record. We disagree.

■ In a mandamus proceeding to review an administrative order, the determination of the penalty imposed by an administrative body will not be disturbed on appeal in the absence of a manifest abuse of discretion. (See *Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194, 217 [124 Cal.Rptr. 14, 539 P.2d 774]; *Stanton* v. *State Personnel Bd.* (1980) 105 Cal.App.3d 729, 744 [164 Cal.Rptr. 557].) In considering whether such abuse occurs in the context of public employee discipline, we assess such factors as the risk of repeated harm to public service, the circumstances of the misconduct, and the likelihood of its recurrence. (See *Skelly* v. *State Personnel Bd., supra,* at p. 218.) The fact that reasonable minds may differ as to the propriety of the penalty imposed fortifies the conclusion that the administrative body acted within the area of its discretion. (*Blake* v. *State Personnel Board* (1972) 25 Cal.App.3d 541, 553 [102 Cal.Rptr. 50].)

■ After a full evidentiary hearing, the dismissal was upheld by the Board. We find no abuse of discretion in the penalty, for the facts amply support the findings that appellant was dishonest, misused state property, and was insubordinate.

The judgment denying the petition is affirmed.

Roth, P. J., and Gates, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 22, 1986.