[No. B024081. Second Dist., Div. Five. Sept. 8, 1987.]

RONALD ANDERSON, Plaintiff and Appellant, v.
STATE PERSONNEL BOARD, Defendant and Respondent.

COUNSEL

Silver, Kreisler, Goldwasser & Shaeffer and Susan Silver for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, Henry G. Ullerich and Martin H. Milas, Deputy Attorneys General, for Defendant and Respondent.

OPINION

**FEINERMAN, P. J.**—This is an appeal from a trial court judgment denying appellant's petition for a writ of mandate following his dismissal as an

officer with the California Highway Patrol (CHP) by the State Personnel Board (Board). Appellant contends that his dismissal for violations of Government Code section 19572, including failure of good behavior (Gov. Code, § 19572, subd. (t)), was improper because his off-duty behavior was not rationally related to his employment and because the penalty of dismissal was an abuse of the Board's discretion.

## BACKGROUND

On March 25, 1983, appellant was dismissed from his job as a traffic officer with the CHP for appearing nude in sight of neighborhood women and children. The appellant appealed the CHP's decision before the Board, but the Board upheld his dismissal. He then filed a petition for writ of mandate to challenge the Board's decision. In case No. C 474962, the superior court granted that petition and ordered the Board to (a) set aside its decision to terminate appellant, (b) set aside one of its finding of fact for lack of substantial evidence and (c) reconsider "what degree of discipline, if any, should be imposed based upon the [remaining] Findings of Fact . . . ."

In compliance with the writ, the Board reconsidered appellant's case and decided to sustain appellant's dismissal without modification. That dismissal was based on findings of fact which involved the following incidents:

### FINDING IV

In the late summer of 1980, appellant's next-door neighbor, Debra Ann Sullivan (Sullivan), was in her back yard with her two children and two or three other youngsters. Her yard was divided from that of appellant's by a five-foot high chain-link fence. As she was pushing some of the children on a swing set, she looked in the direction of appellant's home and saw him standing in a large bay window. He seemed to be nude, so she quickly turned around, assuming that appellant might just have stepped out of the shower or been caught unawares in front of his window. When she glanced back a couple of minutes later, however, appellant was still there fully exposed above the knees. Sullivan testified that to be seen in this manner, appellant would have had to try to "get right in front of the window."

Sullivan then ushered the children into her house. En route to the house, she glanced again toward appellant's window, thinking she had made a mistake. She saw appellant lying on his bed and it was obvious to her that

"he had an erection." According to Sullivan, the distance of her yard to appellant's window was approximately 50 feet.[1]

When this episode occurred, Sullivan was aware of appellant's employment with the CHP because appellant had introduced himself to her and her husband, who was a deputy sheriff. She had also seen the appellant in his uniform and patrol car on several occasions. Neither Sullivan nor her husband talked to appellant about the incident.

FINDING V

Mrs. Carol (Bowlby) Hunt moved next door to appellant in August of 1980. A few months later, she was mowing her back yard lawn when she looked up and thought she saw appellant nude in a window which was approximately three feet by four feet. Feeling embarrassed, she turned off the mower and went into her house. At the time, she knew that appellant was a CHP officer.

FINDING VII

On or about August 15, 1981, Doris Limon (Doris) was babysitting for Sullivan at Sullivan's home. Doris was there with a friend named Tina, when she heard Tina say, "Oh, my God." She told Doris that she had seen appellant nude. Although Doris had not seen the appellant just then, she looked over toward a wooden fence between the houses about a minute later and saw the "back of [appellant's] rear" as the sun shone through the cracks of the fence. This frightened Doris, so she took the children and went in the house. Doris told Sullivan about the incident.

FINDING VIII

On August 17, 1981, Doris was babysitting for a neighbor who lived across the street from appellant. She was playing with the children in the front yard and visiting with her friend Tina when she felt someone staring at her. She turned and saw appellant sitting in front of a five-foot-by-eight foot window with a pair of binoculars. The window cut across appellant's pubic area and Doris could see pubic hair from beneath appellant's "belly

---

[1] In other testimony, Sullivan indicated that on a cool day following this incident, she found her son and her son's friend playing horseshoes with appellant. Appellant was dressed only in a pair of white shorts. Sullivan took the children away from appellant's house and instructed them not to play near his yard "because he was not a good person." Soon thereafter, her son said that he and his friend had sometimes seen appellant in his back yard naked and that appellant would run into his house when he saw them. This testimony was not made part of the Board's findings of fact.

button." When Doris looked over a second time, she saw appellant peering from behind a curtain with his binoculars. According to Doris, it was common knowledge among the people in her neighborhood that appellant was a CHP officer. She was 14 when these incidents occurred.

The Board considered two other findings before reaffirming its decision to dismiss the appellant. *Finding II* indicated that appellant had worked for the CHP for 22 years, that he was promoted to Sergeant on May 1, 1976, and that he had good performance reports. *Finding III* stated that in 1976, while assigned to the Santa Barbara area, appellant was investigated for alleged indecent exposure while off duty in the vicinity of his house. The finding specified that appellant was absolved of wrongdoing but was issued a memorandum advising him to be more discreet in his nude activities around his home.

At the evidentiary hearing concerning appellant's case, three CHP officers testified. Retired Captain Odie V. Hunter (Hunter) stated that appellant had worked for him out of the CHP Santa Barbara office. In 1976, Hunter received complaints from two teenaged girls that the appellant had appeared naked before them. Although no punitive action was taken against the appellant, Hunter wrote a memorandum that admonished appellant that public nudity was not in the best interest of the department. According to Hunter, the memorandum directed appellant to be careful and take measures against being seen publicly nude. Hunter further testified that he had discussed the memorandum with appellant to make sure that appellant understood what it said and what the department's intent was.

CHP Officer Willy Ray Bledger (Bledger) next testified that he and Captain Max Van Orsdel (Van Orsdel) interviewed appellant on November 10, 1982. Appellant stated that Sullivan's son had seen him nude in his back yard. He also indicated that some children had inadvertently seen him naked as they came around the corner of his fence while he was in his back yard.

After his interview with appellant and the witnesses against him, Van Orsdel decided that appellant should be dismissed from the force. He recommended dismissal because he believed that the instances of exposure were too similar and recurrent to be accidental. He also considered Hunter's 1976 directive about which Van Orsdel had personal knowledge. Van Orsdel stated that that memorardum had explicitly censured acts of public nudity as unacceptable to the department and cautioned that appellant must exercise utmost discretion to avoid being seen by the public if he persisted in nude sunbathing. Van Orsdel believed that appellant had not used such discretion.

Van Orsdel also opined that appellant was no longer an effective representative of the CHP with respect to allied law enforcement agencies in the community because he had lost his personal credibility. Within the CHP, Van Orsdel felt that appellant could not work effectively with his peers because he had been stigmatized by his indiscreet behavior and that his effectiveness with his subordinates had been compromised due to lost respect. During cross-examination, Van Orsdel acknowledged that appellant had served more than 20 years on the force, had had no reports of censure before or after 1976, had had one prior commendable report and had no sustained complaints or criminal charges filed against him. Nevertheless, Van Orsdel stated that any penalty less than job termination would be "totally unsatisfactory" to himself and the department.

In his defense, appellant testified that he had sunbathed nude in his back yard no more than five times in the three-year period leading up to November 1982. He denied ever exposing himself intentionally and did not recall the incident of which Sullivan complained. Although he admitted to occasionally emptying his trash in the nude, he did not recall the incidents reported by Doris. He did remember the incident when Bowlby saw him naked but said he was hurrying across his room to get a bathrobe and thought her back was turned. He also recalled an instance when he was sunbathing nude and three children, including Sullivan's, approached his yard through an easement or culvert area which ran behind his and his neighbor's property. He said he wrapped himself in a towel and ceased his sunbathing.

With respect to the 1976 memorandum of censure, appellant denied that he was instructed to be particularly discreet and careful in the area of his house and yard so as not to appear naked to passersby. Instead, he said that the memorandum absolved him of fault and only generally advised him to be more discreet regarding any future conduct.

Finally, appellant testified that none of his neighbors had complained to him about his nude activity and that the first time he learned of the problem was when the CHP told him he was the subject of an investigation. This was in 1983.[2] As soon as the appellant was made aware of the allegations against him, he tinted his windows to avoid being seen by neighbors.

---

[2] In October 1982, Sullivan contacted the San Luis Obispo County Sheriff's Department regarding appellant's alleged nude appearances in and around his residence in front of her and her neighbors during the preceding two and a half years. The sheriff's department in turn informed the CHP that it was investigating allegations of indecent exposure (Pen. Code, § 314) made against appellant. No criminal charges were filed against appellant as a result of either the sheriff's or the CHP's investigation.

DISCUSSION

I

■ Appellant contends that insubstantial evidence exists to show that he intentionally exposed himself to neighbors or to indicate that his nude activity adversely affected his job performance. He argues that his behavior does not demonstrate a lack of fitness as a traffic officer and could not "easily" have resulted in impairment or disruption of the public service. In particular, he maintains that he should not have been disciplined for violation of Government Code section 19572, subdivision (t) which concerns "failure of good behavior . . . of such a nature that it causes discredit to the appointing authority or the person's employment."

In denying appellant's second petition for a writ of mandate, the trial court made a statement of decision which included the following set of findings and determinations: "The question of whether [appellant's] conduct was reasonably related to his employment has been decided adversely to [him] in Case No. C 474962. Since [appellant] did not appeal from the judgment therein [in which the court granted appellant's writ of mandate] and the judgment is final [appellant] is bound by res judicata and collateral estoppel from re-litigating that issue. . . . [T]his Court nevertheless has examined the entire record and finds that [appellant's] conduct reasonably related to his fitness for employment as a member of the [CHP]. This finding was clearly implied in [the Board's] decision. The evidence establishes that in 1976 [appellant] was warned about his activities in the nude around his home. In the summer of 1980, [appellant] intentionally exposed himself in the nude to a neighbor and her children. The same conduct was repeated in August, 1980, when [appellant] exposed himself to another neighbor. On two occasions in the summer of 1981, [appellant] repeated this same conduct. The evidence establishes that [appellant's] conduct was intentional. Such conduct clearly had a connection with his employment in that the neighbors knew [appellant] was a member of the [CHP] and he knew, or reasonably should have known that his conduct was in violation of the law. [Citations.]"

The record does not support the trial court's conclusion that appellant's activities violated the law. ■ Nevertheless, a determination of whether there has been a failure of good conduct under Government Code section 19572, subdivision (t) does not require "that the employee be convicted of a crime [or] that it appear that [his] actions . . . [were] illegal." (*Warren* v. *State Personnel Bd.* (1979) 94 Cal.App.3d 95, 104 [156 Cal.Rptr. 351].) ■ Moreover, as detailed by the court, we find that substantial evidence existed to support a finding of intentional conduct. (*Skelly* v. *State Person-*

*nel Bd.* (1975) 15 Cal.3d 194, 217, fn. 31 [124 Cal.Rptr. 14, 539 P.2d 774]; *Constancio* v. *State Personnel Bd.* (1986) 179 Cal.App.3d 980 985 [225 Cal.Rptr. 133].) Indeed, appellant concedes that the judgment granting his original writ of mandate was against him on the issue of whether the express factual findings were supported by substantial evidence, with the exception of the one finding of fact set aside by the trial court.

In that original judgment, the trial court ordered the Board to "render a new decision wherein [it] reconsider[ed] what degree of discipline, if any, should be imposed upon the [remaining] Findings of Fact . . . ." Appellant maintains that the court's mandate did not "imply" any finding of unfitness. We disagree.

Clearly, had the trial court found no connection between appellant's nude behavior and his employment with the CHP, it would not have allowed the Board to consider any discipline at all. Moreover, assuming, arguendo, that the trial court in the first mandate proceeding failed to make a ruling on the merits of appellant's fitness to serve, substantial evidence exists to support the trial court's specific finding and determination in the subsequent hearing that appellant's conduct was "reasonably related to his fitness for employment as a member of the [CHP]" and that this "finding was clearly implied in the [Board's] decision."

██ Unquestionably, the actions of a law enforcement officer must be above reproach, lest they bring discredit on the officer's employer. (*Flowers* v. *State Personnel Bd.* (1985) 174 Cal.App.3d 753, 759 [220 Cal.Rptr. 139]; *Fout* v. *State Personnel Bd.* (1982) 136 Cal.App.3d 817, 821 [186 Cal.Rptr. 452].) ██ Here, Captain Van Orsdel testified that knowledge of appellant's activities would undermine his credibility with members of other law enforcement agencies and attenuate his effectiveness with both peers and subordinates within the CHP. In recommending appellant's dismissal, he also testified that appellant's off-duty conduct "had brought embarrassment to the Department, that his conduct was contrary to the character of an employee that's demanded by the State Personnel Board and by the responsibilities . . . assigned [an officer] . . . [who serves] as a supervisor with the California Highway Patrol." He concluded that appellant's activities had been inconsistent with what was expected of "a sworn Peace Officer and a State employee."

The trial court obviously found credible Van Orsdel's assessment that appellant's off-duty activity had cast discredit upon himself and the agency he represented and had so undermined his relationship with law enforcement personnel that it could "easily result in the impairment or disruption of the public service." (*Warren* v. *State Personnel Bd., supra,* 94 Cal.App.3d

at p. 104.) As the area commander of the CHP unit for which appellant worked, Van Orsdel's opinion and evaluation of the nexus between appellant's failure of good behavior and its impact on his job were entitled to great weight. Accordingly, the trial court's finding of unfitness was supported by substantial evidence. (*Parker* v. *State Personnel Bd.* (1981) 120 Cal.App.3d 84, 88 [174 Cal.Rptr. 333].)

## II

█ Appellant next contends that the Board abused its discretion in assessing a penalty of dismissal for his indiscretions. He maintains that before a formal investigation was instituted against him, he had no prior warning that his nudity had offended anyone and that the Board should have employed some form of progressive discipline "rather than imposing the death penalty of termination." █ Appellant also argues that reference to his 1976 memorandum of direction contravened the intent of Government Code section 19589.

Government Code section 19589 provides that "[l]etters of reprimand shall be removed from the personnel file of the state employee and destroyed not later than three years from the date the letters were issued." Here, the record shows that the memorandum in appellant's file was removed by the time of the instant investigation.

A review of the legislative history surrounding this statute indicates that the purpose of expungement is to permit employees to seek promotion or to continue working "without the stigma such documents convey." (Legis. Analysis by Bus. & Transp. Agency, Dept. of Motor Vehicles, furnished by the Legislative Intent Service.)[3] In statements before the State Finance Committee and the Assembly Committee on Public Employees and Retirement, the sponsor of this legislation also indicated that past mistakes should not remain as a "black mark" on an employee's record for indefinite periods of time. (Statement of Assemblyman Dominic Cortese on Assem. Bill No. 896 to Sen. Com. on Fin. on Aug. 15, 1983, and before Assem. Com. on Public Employees & Retirement, Apr. 13, 1983.)[4]

However, nothing in our review of the legislative history indicates that, once expunged, such reprimands may not be referred to in testimonial

---

[3] The Legislative Intent Service is a commercial service which provides documents relating to the origin of California statutes. For an example of its use by the Supreme Court, see *Commodore Home Systems, Inc.* v. *Superior Court* (1982) 32 Cal.3d 211, 219 [185 Cal.Rptr. 270, 649 P.2d 912].

[4] Both of these statements were provided by the Legislative Intent Service. (See fn. 3 above.)

evidence to demonstrate that a public employee was forewarned that certain types of behavior were inappropriate, would not be tolerated and should be carefully avoided in the future. Clearly, appellant could not be punished in 1983 for the incident in 1976 which prompted Captain Hunter to write his directive. Nevertheless, the expungement statute could not have been intended to shelter appellant from any and all references to specific orders given him that he be more discreet about nude activity before the public.

Indeed, had Hunter only admonished appellant orally and not included a written memorandum in his personnel file, the verbal directive would stand as an appropriate warning to appellant that future indiscretions would subject him to disciplinary proceedings by the CHP. The Legislature cannot reasonably have intended that a public employee would derive a windfall in terms of censurable behavior simply because a warning was also entered in writing. For the protection of the public and public agencies, the Board may properly consider a public servant's disregard of direct orders, substantial evidence of which is provided by testimonial evidence during the employee's administrative hearing.

■    Given the appropriateness of the Board's consideration of the testimonial evidence about the 1976 reprimand, in addition to the other evidence before it, we are left only to consider the severity of appellant's punishment.    ■    As we have noted, the propriety of the penalty imposed by an administrative agency rests within the sound discretion of that agency and will not be disturbed absent an abuse of discretion. (*Fout* v. *State Personnel Bd., supra,* 136 Cal.App.3d at p. 821.) Neither a trial court nor a reviewing court is "free to substitute its discretion for that of the administrative agency concerning the degree of punishment imposed." (*Ibid.*)

■    In determining whether an abuse of discretion has occurred in the discipline of a public employee, "the overriding consideration is the extent to which the employee's conduct resulted in, or if repeated is likely to result in, harm to the public service. Other factors include the circumstances surrounding the misconduct and the likelihood of its recurrence." (*Fout* v. *State Personnel Bd., supra,* 136 Cal.App.3d at p. 821; *Skelly* v. *State Personnel Bd., supra,* 15 Cal.3d at p. 218.) In assessing these factors, we note that there are professions, like that of law enforcement, which impose upon its servants certain "'responsibilities and limitations on freedom of action which do not exist in other callings.'" (*Ackerman* v. *State Personnel Bd.* (1983) 145 Cal.App.3d 395, 400 [193 Cal.Rptr. 190], citing *Board of Trustees* v. *Stubblefield* (1971) 16 Cal.App.3d 820, 824 [94 Cal.Rptr. 318].)

■    The record before us amply shows that appellant's public nudity not only offended neighborhood women and children but brought

embarrassment and discredit to the law enforcement agency he served. Credible evidence exists to show that appellant's actions harmed the reputation of the CHP and undermined the effectiveness of his relations with fellow officers. The CHP was therefore under no obligation to risk a recurrence of his inappropriate behavior, especially in light of appellant's disregard of a previous warning about public nudity. Thus, despite appellant's efforts to tint his windows after he became aware of a departmental investigation, we cannot say the penalty of dismissal was clearly excessive. (*Constancio* v. *State Personnel Bd., supra,* 179 Cal.App.3d at p. 991.) There was no abuse of discretion. (*Barber* v. *State Personnel Bd.* (1976) 18 Cal.3d 395, 404 [134 Cal.Rptr. 206, 556 P.2d 306].)

The judgment is affirmed.

Ashby, J., and Hastings, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 25, 1987.