[No. C002468. Third Dist. Apr. 26, 1988.]

GERALD THOMPSON, Plaintiff and Appellant, v.
STATE PERSONNEL BOARD et al., Defendants and Respondents;

COUNSEL

Mastagni, Holstedt, Chiurazzi & Curtis and Mark R. Kruger for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, N. Eugene Hill, Assistant Attorney General, Paul H. Dobson and Carol Hunter, Deputy Attorneys General, for Defendants and Respondents.

OPINION

**CARR, J.**—Gerald Thompson (Thompson) appeals from a judgment denying his petition for writ of mandate to review the decision of the State Personnel Board (Board) dismissing him from his position as a state correctional officer. Thompson contends (1) there was insufficient evidence to support two of the Board's findings and (2) the punishment of dismissal was excessive. We shall affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

On the night of March 20, 1986, John Parker went to a bar with his girlfriend. They were joined by Gary Pope and the three sat together, talking and drinking.

Approximately 30 people were in the bar, including Thompson, an off-duty correctional officer. Patrons described Thompson as acting "rude" and "obnoxious" throughout the evening. Thompson joined Parker and Pope and an argument ensued. Because the situation was getting ugly, Parker decided to take his girlfriend home.

When Parker returned to the bar, Pope and Thompson were still sitting together and things seemed to have calmed down. Parker walked over to the men, put one arm around each of them, shook them and said, "Let's go home." Thompson pulled out a gun and pointed it two inches from Parker's face, saying "Don't do that again."

Parker backed away but became very angry. He pulled Thompson off the bar stool and knocked him to the floor. He began to choke Thompson, yelling at him for pointing a gun at him. Several patrons pulled Parker off Thompson and another removed the gun from Thompson's waistband. The gun was fully loaded with seven rounds of ammunition and the safety was

off. Thompson was arrested for assault with a deadly weapon. (Pen. Code, § 245, subd. (a).)

Upon arriving at the jail, Thompson telephoned Rodney Marlin, his watch commander. According to Marlin, Thompson sounded intoxicated and upset. He told Marlin he had been arrested for pulling a gun on someone at the bar.

Thompson testified he had received death threats from the Aryan Brotherhood, a prison gang. He stated that when Parker grabbed him by the shoulder, he thought he was being attacked by a gang member and drew his gun in defense. When he saw it was Parker, he immediately put the gun away. He acknowledged he had never seen gang members at the bar.

Thompson was dismissed from his position as a correctional officer for "[d]iscourteous treatment of the public or other employees" (Gov. Code, § 19572, subd. (m)) and "[o]ther failure of good behavior either during or outside of duty hours which is of such a nature that it causes discredit to [his] agency or [his] employment." (*Id.,* at subd. (t).)

After a hearing, an administrative law judge upheld the dismissal, and the Board adopted the judge's proposed decision. Thompson's petition for writ of mandate to review this decision was denied. This appeal followed.

DISCUSSION

I

Thompson contends there was insufficient evidence to support two of the findings made by the Board. We disagree.

■ "The Board is a statewide administrative agency deriving its adjudicative powers from the state Constitution; the Board's findings must be upheld by a reviewing court if they are supported by substantial evidence. 'We review the board's decision in light of the entire administrative record. . . . Our standard is whether the record discloses substantial evidence (reasonable, credible and of solid value) such that a reasonable trier of fact could have found as it did.'" (Citations omitted.) (*Constancio* v. *State Personnel Bd.* (1986) 179 Cal.App.3d 980, 985-986 [225 Cal. Rptr. 133].) ■ An appellate court may not substitute its judgment for that of the Board, even if another equally reasonable determination might have been made. (*Flowers* v. *State Personnel Bd.* (1985) 174 Cal.App.3d 753, 759 [220 Cal Rptr. 139].)

In finding IV, the Board determined: "On March 20, 1986, the appellant was drinking in a bar. He and another patron at the bar became so loud and argumentative that a couple sitting with them left. The man took the woman home and returned to the bar. He walked up to the appellant and the other patron. He put a hand on each of their shoulders and suggested that they go home. The appellant drew a gun out of his belt and pointed it in the face of the man that had suggested that he go home. The man became upset. A fight ensued and the man took away the appellant's gun. The police were called and the appellant was arrested."

 Thompson contends this finding is not justified because it was based solely on the testimony of Parker, whose credibility had been undermined. He asserts Parker cannot be believed because of discrepancies in his description of events. According to the police report, Parker said he attacked Thompson immediately upon seeing the gun. Parker denied making such a statement and testified several seconds had passed and the gun was no longer in view when he pulled Thompson to the floor.

 " 'Credibility, or lack thereof, is for the factfinder, not the reviewing court, to determine. The trier of fact's determination will be interfered with on appeal only when it appears that the witness' testimony is inherently so improbable as to be unworthy of belief. . . .' " (*Flowers* v. *State Personnel Bd.*, *supra*, 174 Cal.App.3d at p. 759.)

 In the instant case, Parker testified Thompson pointed a gun at him. Thompson himself admitted pulling out his gun, and Marlin testified Thompson said he had been arrested for "pulling a gun on someone." Whether Parker immediately attacked Thompson or did so only after a few moments had passed is immaterial. There is nothing inherently improbable in Parker's testimony.

Thompson specifically challenges the Board's finding that "a fight ensued and the man took away the appellant's gun." He asserts that because he did not offer any resistance to Parker, no "fight" occurred, a contention we can only characterize as nitpicking. Parker threw Thompson off a bar stool, held him on the floor, choked him and screamed obscenities at him. Other customers had to pull Parker off Thompson. While such conduct may not technically constitute a "fight," it is certainly close enough to support the Board's characterization.

Thompson correctly notes the Board erred in finding "the man," i.e., Parker, took away Thompson's gun. The record clearly discloses another patron, Robert Siegal, disarmed Thompson. However, as the question of

who took away the gun was only peripheral to the issues before the Board, we conclude the error is harmless.

■ Thompson next challenges finding V as not supported by the evidence. This finding provided: "The appellant stated that he carried a gun because he was afraid of a prison gang. If that were true he should have stayed out of bars and refrained from drinking. The appellant's actions cannot be condoned. A peace officer cannot threaten people with a gun. The appellant's actions warrant his dismissal."

Thompson asserts the Board's statement that Thompson "should have stayed out of bars and refrained from drinking" merely reflects the opinion of the administrative law judge and is not a finding of fact. We agree. Again, however this gratuitous statement is only peripheral to the issue pending before the Board, i.e., whether dismissal was warranted. The Board clearly stated Thompson's actions in threatening another with a gun justified punishment. Any error in including an unsolicited statement of opinion in the findings of fact is harmless.

## II

■ Thompson next contends the penalty imposed, dismissal, was too severe. We disagree.

■ " 'The penalty imposed by an administrative body will not be disturbed in mandamus proceedings unless an abuse of discretion is demonstrated. Neither an appellate court nor a trial court is free to substitute its discretion for that of the administrative agency concerning the degree of punishment imposed.' 'In considering whether such abuse occurred in the context of public employee discipline, we note that the overriding consideration in these cases is the extent to which the employee's conduct resulted in, or if repeated is likely to result in, "[h]arm to the public service." Other relevant factors include the circumstances surrounding the misconduct and the likelihood of its recurrence.' " (Citations omitted.) (*Washington* v. *State Personnel Bd.* (1981) 127 Cal.App.3d 636, 642 [179 Cal Rptr. 637]; see *Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194, 217-218 [124 Cal Rptr. 14, 539 P.2d 774].) In weighing these factors, we may consider the nature of the profession in issue, since some occupations such as law enforcement, carry responsibilities and limitations on personal freedom not imposed on those in other fields. (*Anderson* v. *State Personnel Bd.* (1987) 194 Cal.App.3d 761, 771 [239 Cal Rptr. 824].)

■ Thompson had been employed as a correctional officer for less than two years at the time of this incident.[1] The severity of his offense cannot be underestimated. After arguing with other patrons and generally behaving in an obnoxious manner, Thompson pulled a gun and pointed it at another person. The safety on the gun was off and it was fully loaded. Thirty people were in the bar; fortunately, no one was injured. A correctional officer must be able to maintain self-control, particularly when armed with a deadly weapon. (*See Anderson* v. *State Personnel Bd., supra,* 194 Cal.App.3d at p. 769; *Gray* v. *State Personnel Bd.* (1985) 166 Cal.App.3d 1229, 1231-1233 [213 Cal. Rptr. 5].)

In arguing the penalty was excessive, Thompson emphasizes his employment record. The Board recognized his lack of prior discipline problems. ■ "The fact that reasonable minds may differ as to the propriety of the penalty imposed fortifies the conclusion that the administrative body acted within the area of its discretion." (*Flowers* v. *State Personnel Bd., supra,* 174 Cal.App.3d at p. 761.) ■ The Board did not abuse its discretion in sustaining the dismissal.

### DISPOSITION

The judgment is affirmed.

Puglia, P. J., and Sparks, J., concurred.

---

[1] In urging dismissal was unwarranted, Thompson relies on *Blake* v. *State Personnel Board* (1972) 25 Cal.App.3d 541 [102 Cal Rptr. 50]. In that case, an off-duty deputy labor commissioner was dismissed for pointing a gun at two other employees. (*Id.,* at pp. 546-547.) The Court of Appeal reversed, finding the punishment excessive. (*Id.,* at pp. 553-554.) *Blake* is readily distinguishable from the instant case, as it involved an employee 53 years of age who had worked for the state nearly 20 years without incident. (*Id.,* at p. 553.) Thompson, on the other hand, had worked as a correctional officer for less than two years. More importantly, the employee in *Blake* was not a peace officer; contrary to counsel's assertion at oral argument, peace officer status was accorded to deputy labor commissioners only in January 1973 (Stats. 1972, ch. 618, § 117, p. 1139), more than four years after the *Blake* incident occurred.