Filed 2/2/21  Kim v. State Personnel Board CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| DO HAK KIM,<br><br>        Plaintiff and Appellant,<br><br>    v.<br><br>STATE PERSONNEL BOARD,<br><br>        Defendant and Respondent. | B298876<br><br>(Los Angeles County<br>Super. Ct. No. BS171095) |

        APPEAL from a judgment of the Superior Court of Los Angeles County.  Mary H. Strobel, Judge.  Affirmed.
        SKLG, Edward G. Operini for Plaintiff and Appellant.
        Erin Holbrook, Chief Counsel; Jerald M. Montoya, Deputy Chief Counsel, and Razmig Khayalian for Defendant and Respondent.

_____

After Caltrans terminated Do Hak Kim's employment for underperformance and insubordination, and the State Personnel Board affirmed the decision, Kim petitioned the superior court for a writ of mandate overturning the Board's decision. The court affirmed the Board in most respects and denied the writ. Kim appeals, contending (1) the Board's decision was unsupported by substantial evidence, (2) discharge was too severe a penalty, and (3) his *Skelly* rights were violated.[1] We disagree with each contention, and therefore affirm.

## BACKGROUND

Caltrans hired appellant in August 1999, and in 2003 placed him in its Engineering Services division as a "Range D" Transportation Engineer, charged with major construction projects. His responsibilities included inspecting public works projects, supervising contractors, and completing daily reports. The position required knowledge of stress analysis, strength properties and uses of construction materials, "mathematics as applied to civil engineering; methods, materials and equipment used in construction and maintenance of transportation structures; surveying; and the methods of proportioning and handling Portland cement concrete." Appellant was supervised by Leadworker Steven Kim (no relation) and Senior Transportation Engineer Vaskin Kuyumijian.

In 2014, appellant stipulated to a six-month suspension to settle disciplinary proceedings in which Caltrans alleged he committed acts of insubordination, willful neglect of duty, and misuse of state property. As part of the settlement, appellant stipulated that he could be subject to another adverse action "if

---

[1] *Skelly v. State Personnel Bd.* (1975) 15 Cal.3d 194 (*Skelly*).

he violate[d] Government Code section 19572 by committing wrongful conduct such as refusing a lawful assignment, telling a supervisor to do Appellant's work, telling a co-worker to do Appellant's work, leaving his assigned work location without permission, or misusing state resources."

On August 9, 2016, Caltrans initiated a second disciplinary action against appellant, indicating he would be dismissed on August 26 because he was incapable of performing some duties, failed to perform others, was absent from work without leave on at least one occasion, and had committed acts of dishonesty and insubordination. Appellant appealed the adverse action to the State Personnel Board (the Board), which held an evidentiary proceeding presided over by an administrative law judge.

At the hearing, Stephen Kim testified that on March 29 and July 11, 2016, appellant was unable to calculate bridge and culvert skew angles, "relatively easy" trigonometric calculations that civil engineers of appellant's grade are expected to be able to do.[2] Kim went over the assignments with appellant, describing the work and providing project plans containing all pertinent information, and offered assistance, but appellant was never able to perform the calculations, even after four attempts over one or two days; Kim was forced to perform them.

Kim testified that on several occasions, appellant's daily reports misclassified work performed. A March 30, 2016 report failed to state the time or location of electrical work performed by

_____

[2] When a road intersects non-perpendicularly with a feature such as a bridge or culvert, the contact area between the two increases in size as a function of the angle of intersection. A skew angle of 0 degrees means the road and feature are perpendicular; a skew angle of 90 degrees means they are parallel.

a contractor. A May 5 work report misstated the location and nature of the work performed, and failed to include the bid number or properly describe the foreman performing the work, the type of "vibrator" machine used, or the type of concrete poured. A May 13 report misstated the work location (a significant mistake), provided incorrect work times, mischaracterized contracted employees, and used indecipherable terminology. Kim had to correct the errors.

On April 7, 2016, appellant failed to appear for work without notifying anyone until the afternoon. When instructed by Kuyumijian to charge the lost time as "absent without leave," he refused to do so, forcing Kuyumijian to make the correction.

On April 19, 2016, appellant was scheduled to supervise a work project, but after reporting to the worksite remained in his truck, forcing Kim to supervise the project. Appellant thereafter left the job site and went to the Caltrans office. He told Kuyumijian the work did not require his supervision, and he had another assignment from Ron Fuentes to perform at the office. Fuentes testified there was no such assignment, as the last task he had given appellant was in March, when he told appellant to sort 100 documents in chronological order. When asked whether it was possible, given his other duties, that appellant had not completed that task by April 19, Fuentes stated, "Possible." However, when asked by the administrative law judge whether he was aware of any outstanding assignment, Fuentes stated, "Not that I recall."

Kuyumijian testified that when he told appellant he must allow Kim, as Leadworker, to decide which work required oversight, appellant responded, "you can talk to my lawyer."

4

On June 2, 2016, a Thursday, appellant was tasked with delivering a bridge roughness assessment to Caltrans headquarters at 10:00 a.m. so it could be interpreted while the assessor evaluated a second bridge, with the goal of performing grinding work on both bridges the next day. Instead of doing so, appellant waited four and a half hours to deliver the assessment, resulting in Caltrans having to push the Friday work to Monday.

On July 14, 2016, appellant inspected a box culvert form prior to a concrete pour, but failed to notice that fewer reinforcing steel bars had been installed than were called for by the project plans. Had Kim not caught the error the next day, the integrity of the freeway passing over the culvert could have been compromised.

On July 21, 2016, appellant failed to appear at a worksite to supervise a 7:00 a.m. pile-driving operation. He instead went to the Caltrans office, and told a coworker he would not be in the field until 8:30 a.m. Kim discovered that appellant was at the office and instructed him to go to the worksite, where he arrived at 7:37, obligating another coworker to cover for him.

In his defense, appellant offered extensive evidence and argument to the effect that Caltrans had failed to train him adequately, his supervisors were particularly and unfairly demanding, and his acts of neglect and nonfeasance constituted only isolated failures that failed to establish good cause for his discharge. We will describe some of this evidence below as it becomes pertinent to the discussion.

The administrative law judge found that appellant's conduct constituted legal cause for discipline under Government Code section 19572, subdivisions (b) (incompetency), (c) (inefficiency), (d) (inexcusable neglect of duty), (e)

5

(insubordination), (f) (dishonesty), (o) (willful disobedience), and (t) (other failure of good behavior). The judge found that appellant failed to prove that Caltrans violated his *Skelly* rights, and that dismissal was a proper penalty for his misconduct.

On May 4, 2017, the Board adopted the administrative law judge's decision, and later denied appellant's petition for rehearing.

Appellant petitioned the superior court for a writ of mandate overturning the Board's decision.

The trial court upheld the Board's factual determinations concerning appellant's incompetency, dishonesty, inexcusable neglect, insubordination, and willful disobedience, and upheld its legal determinations that appellant's *Skelly* rights were not violated and termination was an appropriate remedy.

## DISCUSSION

Appellant contends the State Personnel Board's findings were unsupported by substantial evidence. We disagree.[3]

### A. Grounds for Dismissal

Tenure of California civil service employment "is subject to good behavior, efficiency, the necessity of the performance of the work, and the appropriation of sufficient funds." (Gov. Code, § 18500, subd. (c)(6).) Adverse employment action may be taken against a state employee on the grounds of incompetency, inefficiency, inexcusable neglect of duty, insubordination, dishonesty, inexcusable absence without leave, willful disobedience, and "[o]ther failure of good behavior" that discredit the employer. (Gov. Code, § 19572, subds. (b), (c), (d), (e), (f), (j), (o), (t).)

---

[3] The parties' joint request for judicial notice of six decisions of the Board is granted. (Evid. Code, § 459, subd. (a).)

**B.    Standard of Review**

A writ of mandate will issue "to compel the performance of an act which the law specifically enjoins, as a duty resulting from an office, trust, or station . . . ."  (Code Civ. Proc., § 1085, subd. (a).)  Where the writ is sought for the purpose of inquiring into the validity of a final administrative decision made as the result of a proceeding in which an evidentiary hearing is required, "the case shall be heard by the court sitting without a jury."  (Code Civ. Proc., § 1094.5, subd. (a).)  "The inquiry in such a case shall extend to the questions whether the respondent has proceeded without, or in excess of, jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion.  Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence."  (*Id*. at subd. (b).)

We review the Board's findings for substantial evidence.  (*Telish v. State Personnel Bd*. (2015) 234 Cal.App.4th 1479, 1483, fn. 3.)

**C.    Analysis**

The trial court upheld appellant's discharge on grounds of incompetency, dishonesty, inexcusable neglect, insubordination, and willful disobedience.

1.    Incompetency

"Incompetency" means "an absence of qualification, ability or fitness to perform a prescribed duty or function."  (*Pollak v. Kinder* (1978) 85 Cal.App.3d 833, 837; see also *D.M*. (1995) SPB Dec. No. 95-10.)  It "exists when an employee fails to perform his or her duties adequately within an acceptable range of performance," despite training, direction, and offers of help.  (*K.S.*

7

(2017) SPB Dec. No. 17-02, p. 15; *Fortunato Jose* (1993) SPB Dec. No. 93-34, p. 2.)

Here, the Board found appellant's inability to calculate the skew of a bridge and culvert, failure on several occasions to properly complete daily reports, and failure to identify missing rebar while inspecting a bridge constituted incompetency.

Substantial evidence supported the determination. Leadworker Kim testified that appellant was unable to calculate bridge and culvert skew angles; misclassified work in his daily reports on several occasions; and on one occasion failed to notice that insufficient rebar had been installed in a project.

Appellant acknowledges these events, but argues they fail to establish incompetency because alternative explanations exist: He was inadequately trained, and isolated mistakes do not constitute incompetence.

At the administrative hearing, appellant testified that he was never trained in and had never performed skew calculations. He was given something like one or two days to complete the calculations, which was not possible, and Kim offered no help.

Appellant testified that of the approximately 1,000 reports he had completed in his career, the March 30, 2016 report was his first for Kim, who gave him no advance notice of his idiosyncratic requirements. Once appellant learned what Kim wanted, he corrected the report himself.

Appellant testified that the May 5, 2016 report—in which he misstated the location and type of the work performed, failed to include a bid number, and failed to properly classify the foreman or describe the type of "pour" or type of vibrator used to perform the work—was only the second he had ever written about that particular type of project. He had never been told to

8

specify the type of foreman employed nor corrected for misclassifying the type of vibrator. Appellant testified that although he misclassified the pour, correct information about it was inferable under the circumstances. Finally, appellant testified that the bid number was immaterial, and its omission a de minimus mistake. Other Range D engineers testified that they made similar mistakes but were never disciplined for them.

Appellant admitted at the hearing that in the May 13, 2016 report he failed to identify whether a work location was an undercrossing or overcrossing, provided incorrect work times, mischaracterized contracted employees, and used indecipherable terminology. However, Leadworker Kim himself testified that he never asked for clarifications, and was able to understand what appellant meant and make corrections himself.

Appellant argues this evidence mandated a finding that the errors resulted from Caltrans' failure to train him, not his incompetency.

We disagree. On appeal, we may not reweigh the evidence to determine whether it would have supported a finding the Board did *not* make; we may only determine whether evidence supports the finding it actually made. It was undisputed that appellant's job description stated that a transportation engineer must be able to perform mathematical calculations associated with civil engineering, and Kim testified that a Range D engineer of appellant's experience is expected to perform the "relatively easy" mathematical calculations associated with skew angles. This evidence supported the Board's conclusion that appellant lacked the ability to perform the prescribed duty despite training, direction, and offers of help. Of course, it is always possible to give more training, direction and help, but an employer is

9

entitled to expect minimum qualifications and performance and a reasonable susceptibility to training, and failing those, to find the employee incompetent.

It was also undisputed that appellant's work required that he write accurate reports, which he admittedly failed to do on three identified occasions. The Board could reasonably conclude from appellant's lengthy experience that the carelessness he exhibited in his latest reports reflected a lack of discipline rather than of training, and fell below an acceptable range of performance.

Finally, appellant admits he failed to notice missing rebar prior to a concrete pour, but argues this was simply one mistake, not incompetency. (*Pollak v. Kinder*, *supra*, 85 Cal.App.3d at p. 839 [one mistake does not constitute incompetency absent other circumstances].) Although we agree that a single, honest mistake in performing job duties does not, without more, constitute incompetency, here the evidence indicated that appellant committed several other mistakes, which all taken together justify the Board's finding.

2. Dishonesty

The administrative law judge found appellant was dishonest when he told Kuyumijian on April 19, 2016, that he was working on an unidentified project assigned by Fuentes. Although Fuentes admitted at the hearing that it was possible appellant was still working on a March assignment as of April 19, the administrative law judge found that appellant's deliberate failure to identify the assignment meant he had received none, but merely sought to avoid returning to work or going home and having to dip into his leave balances.

10

Appellant argues that Fuentes's testimony to the effect that it was possible appellant was working on something he assigned precludes a finding of dishonesty.  We disagree.

A finding of dishonesty "generally requires a showing of an intentional misrepresentation of known facts, or a willful omission of pertinent facts, or a disposition to lie, cheat or defraud." (*Gee v. California State Personnel Bd.* (1970) 5 Cal.App.3d 713, 718-719; accord *Haji Jameel* (2005) SPB Dec. No. 05-02, p. 17, fn. 23.)

Fuentes testified that he gave appellant a minor assignment in March, which he did not believe had carried into April.  The testimony was not so "inherently so improbable as to be unworthy of belief." (*Flowers v. State Personnel Bd.* (1985) 174 Cal.App.3d 753, 759.)  Therefore, the Board was entitled to credit Fuentes and reject appellant's contrary testimony.  (See Gov. Code, § 11425.50, subd. (b) [credibility determination entitled to great weight].)  Moreover, appellant offered no explanation about when he received the assignment from Fuentes, how complex the task was, or why he had not completed it by April.  The Board was therefore entitled to surmise that appellant told Kuyumijian about the task only to avoid having to work.  In all, substantial evidence supported the determination that appellant was dishonest about working on Fuentes's mesh diaries on April 19, 2016, justifying a finding of dishonesty under Government Code section 19572, subdivision (f).

3.      Inexcusable Neglect, Insubordination, and Willful Disobedience

The Board found appellant inexcusably neglected his duty when on April 7, 2016, he failed to appear for work without notifying anyone until the afternoon.  It found he was

insubordinate and willfully disobedient when he refused to charge the lost time as "absent without leave" when instructed by Kuyumijian to do so.

"Finding inexcusable neglect of duty requires finding an employee intentionally or with gross negligence failed to exercise due diligence in the performance of a known official duty. To be subject to discipline for inexcusable neglect of duty, an employee must have actual or constructive notice of expected standards of conduct, unless the conduct is so clearly wrong that notice is not necessary." (*K.S.* (2017) SPB Dec. No. 17-02, p. 17.)

"To support a charge of insubordination, an employer must show mutinous, disrespectful or contumacious conduct by an employee, under circumstances where the employee has intentionally or willfully refused to obey an order a supervisor is entitled to give and entitled to have obeyed. A single act may be sufficient to constitute insubordination if it meets the above test." (*Richard Stanton* (1995) SPB Dec. No. 95-02, p. 5.) Willful disobedience requires evidence demonstrating only that appellant intentionally disobeyed a specific command. (*Richard J. Hildreth* (1993) SPB Dec. No. 93-22, p. 3.)

Appellant's failure to appear for work without notice, which he admits, is a quintessential neglect of duty. Appellant argues the Board abused its discretion in finding him inexcusably neglectful, however, because he had an excuse: He was sick and his phone had broken.

But the administrative law judge disbelieved appellant's excuse, and we may not revisit such a credibility determination.

Appellant further admits that he was insubordinate and willfully disobedient, and acknowledges some penalty should

12

follow, but he argues dismissal was too harsh.  We shall discuss the penalty below.

## D.    Dismissal was a proper Penalty

Appellant contends that his supervisors gave him unreasonable deadlines, held unrealistic expectations, and provided inadequate training, rendering his dismissal unjustified.  We disagree.

" '[I]n a mandamus proceeding to review an administrative order, the determination of the penalty by the administrative body will not be disturbed unless there has been an abuse of its discretion.' " (*Skelly*, *supra*, 15 Cal.3d at p. 217.)  "In considering whether such abuse occurred in the context of public employee discipline, . . . the overriding consideration . . . is the extent to which the employee's conduct resulted in, or if repeated is likely to result in, '[h]arm to the public service.' [Citations.]  Other relevant factors include the circumstances surrounding the misconduct and the likelihood of its recurrence." (*Id*. at p. 218.)

When an administrative body's findings are not in dispute, abuse of discretion is established where the body's order or decision is unsupported by the findings.  (*Topanga Assn. for a Scenic Community v. County of Los Angeles* (1974) 11 Cal.3d 506, 514-515.)  The court conducts a "de novo comparison of the findings and the penalty" to ensure that the findings are not "inconsistent with [the administrative body's] action in reducing the penalty," resolving all reasonable doubts in favor of the administrative decision.  (*County of Santa Cruz v. Civil Service Commission of Santa Cruz* (2009) 171 Cal.App.4th 1577, 1584 (*Santa Cruz*); *Topanga*, at p. 514.)

"[T]he overriding consideration is the extent to which the employee's conduct resulted in, or if repeated is likely to result in,

13

harm to the public service." (*Warren v. State Personnel Bd.* (1979) 94 Cal.App.3d 95, 107-108.) Whether an employee's conduct has resulted or is likely to result in harm to the public service if repeated requires consideration of the nature of the employee's profession, because "some occupations such as law enforcement, carry responsibilities and limitations on personal freedom not imposed on those in other fields." (*Thompson v. State Personnel Bd.* (1988) 201 Cal.App.3d 423, 429.)

We may not substitute our own judgment for that of the Board, nor "disturb the agency's choice of penalty absent ' "an arbitrary, capricious or patently abusive exercise of discretion" ' by the administrative agency" (*Cassidy v. California Bd. of Accountancy* (2013) 220 Cal.App.4th 620, 627-628), but must uphold the penalty if there is any reasonable basis to sustain it. (*Deegan v. City of Mountain View* (1999) 72 Cal.App.4th 37, 46.) Only in an exceptional case will an abuse of discretion be shown because reasonable minds cannot differ on the appropriate penalty. (*Id.* at p. 45; see *Kolender v. San Diego County Civil Service Com.* (2007) 149 Cal.App.4th 464, 471 [the court may find an abuse of discretion where an agency's decision exceeds the bounds of reason].)

We review a penalty determination by the Board under the same abuse of discretion standard applied by the trial court. (*Santa Cruz, supra*, 171 Cal.App.4th at p. 1581.)

Here, appellant was unable to perform a number of relatively basic tasks such as engineering calculations and accurate report writing. He demonstrated a lack of diligence in performing his duties on several occasions, both by failing or refusing to show up for work and by making careless mistakes. And he failed on several occasions to comply with Caltrans

policies and instructions from his supervisors. Appellant's supervisors testified that his failure to oversee a concrete pour potentially created a major safety risk, and his miscalculations for bridge and culvert skews, as well as his failure to notice missing rebar on another project, could have placed the public in physical and Caltrans in financial risk if left uncorrected.

The evidence suggests that appellant's neglectful conduct was persistent. He himself testified that he had been a Caltrans engineer for 14 years, yet after all that time was still failing in fundamental tasks, failing to appear for work, and refusing instructions. Under these circumstances, we conclude the Board acted within its discretion in affirming the penalty of discharge.

## E. The Board properly concluded that Appellant did not prove a *Skelly* violation.

Caltrans alleged appellant was insubordinate on August 2, 2016, when he refused to follow a directive issued by Kim. At the hearing, the administrative law judge dismissed this allegation as unfounded. Appellant nevertheless contends Caltrans violated his *Skelly* rights by failing to provide him with the August 2 daily report, upon which he argues Caltrans based the allegation. We disagree.

Due process entitles public employees to a pre-disciplinary hearing before any discipline is imposed. Before the hearing, the employee must be given a copy of the charges and materials upon which the action is based. (*Skelly*, *supra*, 15 Cal.3d at p. 215.) A party claiming a *Skelly* error must demonstrate that absent the error, he "would have obtained a better outcome." (*Fisher v. State Personnel Board* (2018) 25 Cal.App.5th 1, 20.) An employer's failure to provide the employee with a document that was not used for a finding of misconduct is harmless. (*Id*. at p. 20.)

15

Here, the administrative law judge found that no evidence indicated Caltrans relied on the August 2, 2016 report when it charged him with insubordination.  But we need not consider that issue, because any error in failing to turn over the document became harmless when that charge was dismissed.

## DISPOSITION

The judgment denying the petition for a writ of mandate is affirmed.  Costs are awarded to Respondent State.

NOT TO BE PUBLISHED

CHANEY, J.

We concur:

ROTHSCHILD, P. J.

FEDERMAN, J.*

---

* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

16