Filed 11/21/18 (unmodified opn. attached)
<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| PAMELA J. PALMIERI, | C082508 |
| Plaintiff and Appellant, | (Super. Ct. No. 34-2013-80001437-CU-WN-GDS) |
| v. | |
| CALIFORNIA STATE PERSONNEL BOARD, | MODIFICATION OF OPINION |
| Defendant and Respondent; | [NO CHANGE IN JUDGMENT] |
| CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, | |
| Real Party in Interest and Respondent. | |

THE COURT:

On the court's own motion, it is ordered that the opinion filed herein on October 31, 2018, be modified as follows:

1

1.     On page 4 under the heading "Count 3," the first occurrence of the word "her" in the first sentence is to be deleted.

The sentence shall now read:

Twice in August 2007 Palmieri was instructed to keep her Outlook calendar updated.

2.     On page 10 in the first partial paragraph beginning with the parenthetical citations, in the bracketed portion of citation to 98 C.J.S. (2018) Witnesses, § 120, the word "objection" is to be inserted after the word "competency.:

The parenthetical citation shall now read:

(*Bear River & Auburn Water & Mining Co. v. Boles* (1864) 24 Cal. 359, 363; see *Kinley v. Largent* (1921) 187 Cal. 71, 74 [" 'All objection to the competency of a witness . . . will be deemed waived if it is not made at the time the evidence is given' "]; 98 C.J.S. (2018) Witnesses, § 120 [a competency objection usually must be lodged before a witness testifies]; 1 McCormick on Evidence (7th ed. 2016) Competency, § 70 [same].)

This modification does not change the judgment.


FOR THE COURT:


_____/s/_____
Duarte, Acting P. J.


_____/s/_____
Hoch, J.


_____/s/_____
Renner, J.

Filed 10/31/18 (unmodified version)

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

PAMELA J. PALMIERI,

      Plaintiff and Appellant,

    v.

CALIFORNIA STATE PERSONNEL BOARD,

      Defendant and Respondent;

CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION,

      Real Party in Interest and Respondent.

C082508

(Super. Ct. No. 34-2013-80001437-CU-WN-GDS)

1

APPEAL from a judgment of the Superior Court of Sacramento County, Christopher E. Krueger, Judge. Affirmed.

Bennett, Sharpe, DeLarosa, Bennett & Licalsi and Barry J. Bennett for Petitioner and Appellant.

Alvin Gittisriboongul and Dorothy Bacskai Egel for Defendant and Respondent.

Xavier Becerra, Attorney General, Chris A. Knudsen, Senior Assistant Attorney General, Celine Cooper, Supervising Deputy Attorney General, Karen L. Donald, Deputy Attorney General, for Real Party in Interest and Respondent.


Plaintiff Pamela J. Palmieri--an attorney hired by real party in interest California Department of Corrections and Rehabilitation (Department) in part to conduct disciplinary cases against prison guards--was herself terminated for misconduct. After a 21-day hearing, she was found culpable of four counts of misconduct, one of which was her discourtesy and dishonesty to an administrative law judge (ALJ) after she was taken to task for her tardiness. She appealed her dismissal to the State Personnel Board (Board) which ultimately upheld her termination. The trial court denied her mandamus petition to overturn her dismissal, and she timely appealed. We shall affirm the judgment.

## BACKGROUND

We largely take the following procedural background and sketch of the facts from the trial court's thorough written decision denying Palmieri's mandamus petition.

A. *Procedural Facts*

After a 25-year career in private practice, Palmieri began working for the Department in 2007. Her job consisted of prosecution of employee discipline cases. She was served with a notice of dismissal on December 13, 2010, and appealed to the Board. Because some of the Board's own ALJs were potential witnesses, the Board referred the matter to an ALJ with the Office of Administrative Hearings (OAH) "to avoid any conflict, potential conflict, or appearance of impropriety." After a 21-day hearing, ALJ

2

Floyd Shimomura (the OAH ALJ) sustained four of 12 counts but reduced the dismissal to a 30-day suspension.

The Board first adopted the OAH ALJ's decision but then granted the Department's rehearing petition and subsequently adopted the OAH ALJ's factual findings but dismissed Palmieri. Palmieri then filed the instant mandamus petition. The trial court denied her petition in May 2016, and she timely appealed.

B. *Basis for Discipline*

Except as otherwise noted, the four sustained counts (which we have renumbered for clarity) were summarized by the trial court as follows:

Count 1: *Dishonesty and Discourtesy*

At an administrative hearing held in a prison in June 2009, ALJ Krestoff told the parties the hearing had to be concluded in one day if possible; breaks would be modified, and the hearing would go after 5:00 p.m. if necessary. When the case adjourned for lunch at 1:00 p.m., Krestoff stated the matter would reconvene at 2:00 p.m., but Palmieri was 20 minutes late. When Krestoff noted her tardiness, she argued that Krestoff had not given her enough time for lunch. "A 'heated discussion' then commenced, during which Palmieri informed [Krestoff] that her supervisor stated she could take an hour for lunch." When Krestoff put this on the record, Palmieri stated that because they had been in a prison with no nearby food facilities it was unreasonable to expect her to be able to get lunch and return in an hour. Her tone was "disrespectful, heated, and argumentative." The Board described Palmieri's attitude as "lackadaisical" and "nonchalant" and noted that she never retracted her false representation that her supervisor gave her leave to disregard the ALJ's directive regarding taking lunch. The OAH ALJ found Palmieri's conduct alarmed other employees who believed Krestoff would dismiss the case if Palmieri could not be found, as Krestoff had suggested he might do.

3

Count 2: *Inexcusable Neglect of Duty and Discourtesy*

In January 2009 Palmieri appeared at a hearing before ALJ R. Brown. She was 13 minutes late the first day and two hours late the second day. She was also late returning from breaks. Brown commented on her tardiness off the record. The next day Palmieri was again late, and Brown placed on the record the need to be on time. When Brown stated tardiness showed lack of respect, "Palmieri told [Brown] she had to look for witnesses and was not responsible if witnesses were not where they were supposed to be when she needed to speak with them. Palmieri never apologized . . . and never notified [Brown] she was going to be late or requested additional time to meet with witnesses." The OAH ALJ found Palmieri returned late "numerous" times "not just a few minutes late, but substantially longer." He found her tardiness was "extreme."

Count 3: *Insubordination and Willful Disobedience*

Twice in August 2007 Palmieri was instructed her to keep her Outlook calendar updated. In March and July 2008 her supervisor could not find her during "core hours" and her calendar did not reflect her whereabouts. The Board found Palmieri had rejected the view that she had done anything wrong and argued that as an attorney she could work when she wanted to.

Count 4: *Discourtesy*

On Friday, April 30, 2010, at 4:30 p.m., Palmieri severely abused a coworker (N.) in the personnel office. She began yelling about a mistake with the withholding in her paycheck, she swore, she pounded her fist, and called the employees "terrible." When N. said she would look into the problem "Palmieri responded that [N.] should make it fast because she was parked at a meter." N. found an error in Palmieri's paycheck but did not return to the counter immediately because she was upset and crying. When N. did return, "Palmieri became more irate and yelled that she had turned in her change request on time and demanded that she be appropriately compensated." N. called a supervisor to help her deal with Palmieri. N. arranged for a salary advance for Palmieri but "had to personally

4

deliver the check to Palmieri because Palmieri refused to come to the personnel office to pick it up." N. "described Palmieri's behavior as the most [abusive] and aggressive she has experienced in 15 years" in human resources. The OAH ALJ found Palmieri's "screaming, demanding, and profanity laced tirade at the personnel staff was outrageous and cruel."

C. *Decision of the Board*

Based on the above misconduct, the Board found Palmieri should be dismissed because her actions as an attorney representing the Department caused discredit to her employer and could have adversely affected the Department's interests, her persistent tardiness and indifference to the problem reflected waste and inefficiency, her false representation to the ALJ reflected poorly on the Department, and her abuse of the personnel employee was unprofessional and created a hostile work environment. The Board found no mitigating circumstances and found the likelihood of recurrence was great because Palmieri's "seamless excuses do not portray a person who recognizes that her actions are unacceptable."

## DISCUSSION

### I

### *Review of the Board's Decisions*

Although Palmieri emphasizes that she is raising purely legal questions, we briefly set forth the basic settled rules governing our review.

> "[The Board] is a 'statewide administrative agency which is created by, and derives its adjudicatory power from, the state Constitution. [Citations.] Under that constitutional grant, [the Board] is empowered to "review disciplinary actions." In undertaking that review, [the Board] acts in an adjudicatory capacity. "The [Board] is an agency with adjudicatory powers created by the California Constitution." [Citation.] As such [the Board] acts much as a trial court would in an ordinary judicial proceeding. Thus, [the Board] makes factual findings and exercises discretion on matters within its jurisdiction. On review the decisions of [the Board] are entitled to judicial deference. The record must be viewed in a light

most favorable to the decision of [the Board] and its factual findings must be upheld if they are supported by substantial evidence. [Citation.]' [Citations.]

"[¶] . . . [¶]

"On appeal, '[w]e apply the substantial evidence test in reviewing a decision of [the Board]. [Citation.] We do not reweigh the evidence; we indulge all presumptions and resolve all conflicts in favor of [the Board's decision. Its findings come before us "with a strong presumption as to their correctness and regularity." [Citation.] We do not substitute our own judgment if [the Board's] decision " ' "is one which could have been made by reasonable people. . . ." [Citation.]' " ' [Citations.]" (*California Youth Authority v. State Personnel Bd.* (2002) 104 Cal.App.4th 575, 584 (*Youth Authority*).)

II

*Due Process*

Palmieri contends the Board violated due process by deciding to rehear her case. In her view, because the Board initially decided to refer the case to a non-Board (OAH) ALJ it could not thereafter hear the case for itself on review. We disagree.[1]

"A challenge to the procedural fairness of the administrative hearing is reviewed de novo on appeal because the ultimate determination of procedural fairness amounts to a question of law." (*Nasha v. City of Los Angeles* (2004) 125 Cal.App.4th 470, 482.)

Because some of the evidence against Palmieri was testimony of Board ALJs (see Part III, *post*), the Board referred the case to OAH to have a non-Board ALJ conduct the evidentiary hearing. Palmieri does not challenge that action and acknowledges that it was appropriate.

Government Code section 19582, subdivision (a), provides in part that "[h]earings may be held by the board, or by any authorized representative, but the board shall render the decision that in its judgment is just and proper." We observe that the last clause of subdivision (a) provides that even where hearings are held by another body, the Board

---

[1] We acknowledge the Board's contention that this issue is not preserved, but we choose to address it on the merits and not address the issue of forfeiture.

6

shall render a decision that *it* deems "just and proper." That is exactly what the Board did in this case. When a matter is heard by a representative, "he or she shall prepare a proposed decision in a form that may be adopted" by the Board, whereupon the Board "may adopt the proposed decision in its entirety, may remand the proposed decision, or may reduce the adverse action set forth therein and adopt the balance of the proposed decision." (*Id.*, § 19582, subd. (b).) "If the proposed decision is not remanded or adopted as provided in subdivision (b), each party shall be notified of the action, and the board itself may decide the case upon the record, including the transcript, with or without taking any additional evidence . . . ." (*Id.*, subd. (c).) That is what the Board did at first. Then, the Department sought rehearing. The request was granted, and the Board reinstated the dismissal after rehearing.

As Palmieri concedes, the Board had discretion whether to act on the rehearing petition. (See *Coburn v. State Personnel Bd.* (1978) 83 Cal.App.3d 801, 812-813; Gov. Code, § 19586.) Noting that OAH matters may be reviewed via the Administrative Procedures Act (only partly applicable to the Board, see *Youth Authority*, *supra*, 104 Cal.App.4th at pp. 589-592), Palmieri posits that once the Board referred the matter to an OAH ALJ, the proper method of review was via the Administrative Procedures Act, and the Board should not have taken further action thereon. This ignores the Board's plenary authority over the state civil service.

As we have described, it is the Board that must "render the decision that in its judgment is just and proper." (Gov. Code, § 19582, subd. (a).) This is not merely a statutory requirement (although it is that), it is a constitutional requirement that no other body can act in lieu of the Board. When legislation was passed ratifying labor memoranda of understanding (MOU) that purported to allow some employee discipline cases to be sent to a review board and thereby bypass the Board, our Supreme Court held:

"It would be inimical to California's constitutionally mandated merit-based system of civil service, which is administered by the [Board], to wholly divest that board of authority to review employee disciplinary actions in favor of an MOU-created review board. This is so because a state civil service based on the merit principle can be achieved only by developing and consistently applying uniform standards for employee hiring, promotion, and discipline. By vesting in the nonpartisan [Board] the *sole* authority to administer the state civil service system (Cal. Const., art. VII, § 3), our state Constitution recognizes that this task must be entrusted to a *single* agency, the constitutionally created [Board]. Because employee discipline is an integral part of the civil service system, the [Board's] *exclusive* authority to review disciplinary decisions is a critical component of the civil service system." (*State Personnel Bd. v. Department of Personnel Admin.* (2005) 37 Cal.4th 512, 526-527.)

Thus, Palmieri's evident view that the Board somehow lost its constitutionally based authority over her case because it initially referred the case to a non-Board ALJ for hearing cannot be correct. In effect, Palmieri is trying to use the Board's act of prudence in assigning the case to divest the Board of further authority over her matter. But the Board did not and could not divest itself of its ultimate authority over Palmieri's discipline case. (Cf., e.g., *Bank of Italy v. Johnson* (1926) 200 Cal. 1, 15 [a public official "may not by the adoption of any rule of policy or procedure so circumscribe or curtail the exercise of his discretion under [a] statute as to prevent the free and untrammeled exercise thereof in every case"].)

True, the Board did not *have* to grant a rehearing, as we have explained. It could have declined to take further action after it adopted the OAH ALJs decision. But it had the discretion to grant a rehearing, and the exercise of that discretion did not violate Palmieri's due process right to a fair determination of her case. She obtained a ruling from the body constitutionally entrusted with the authority to decide her claim, and the fact that body ruled against her does not implicate her due process rights.[2]

---

[2] In passing Palmieri suggests that there was some impropriety because a former supervising ALJ had spoken with Krestoff about Palmieri and later became the Board's Chief Counsel. This suggestion, if even intended to be a claim, is forfeited because it was not fairly embraced by the heading. (See *Loranger v. Jones* (2010) 184 Cal.App.4th

### III

*Evidence Code section 703.5*

Palmieri contends two ALJs who testified adversely to her (Krestoff and R. Brown) should not have been allowed to testify. She does not challenge the testimony of G. Brown, an ALJ who testified favorably for her. In support of this claim she relies on Evidence Code section 703.5, which provides in relevant part (with exceptions): "No person presiding at any judicial or quasi-judicial proceeding . . . shall be competent to testify, *in any subsequent civil proceeding*, as to any statement, conduct, decision, or ruling, occurring at or in conjunction with the prior proceeding." (Italics added.)

The OAH ALJ overruled this objection, finding it came too late, because Palmieri allowed the ALJs to testify and cross-examined them, but waited to object until after the Department had rested and she had almost finished her case. The trial court noted but did not decide the forfeiture issue and found the statute did not apply to administrative hearings.

We agree with the Department and the Board that the objection is forfeited because it was not timely made. Palmieri should have objected as soon as she understood ALJs were going to testify.[3] We agree with the Department that Palmieri engaged in "a naked attempt to game the hearing process" by waiting to see if the evidence was favorable before interposing her objection. Waiting to see how the evidence turned out

---

847, 858, fn. 9.) Further, as the Department and the Board point out, Palmieri does not point to any evidence in the record showing that person unfairly influenced the Board or affected the investigation, she merely cites her own filing in the trial court that also does not cite the administrative record. And, even if shown, a mere appearance of impropriety is insufficient as a matter of law in such circumstances. (See *Today's Fresh Start, Inc. v. Los Angeles County Office of Education* (2013) 57 Cal.4th 197, 221-222; *Burrell v. City of Los Angeles* (1989) 209 Cal.App.3d 568, 582.)

[3] The Department points out that both parties listed all three of these ALJs as witnesses in their respective prehearing statements, so Palmieri could not have been surprised when one or both testified. She had ample time to object.

9

and then objecting or moving to strike was not sufficient. "Parties will not be permitted to experiment upon a witness by admitting his testimony without objection, and, if it turns out to be favorable, accept it; but, if unfavorable, move to strike it out." (*Bear River & Auburn Water & Mining Co. v. Boles* (1864) 24 Cal. 359, 363; see *Kinley v. Largent* (1921) 187 Cal. 71, 74 [" 'All objection to the competency of a witness . . . will be deemed waived if it is not made at the time the evidence is given' "]; 98 C.J.S. (2018) Witnesses, § 120 [a competency usually must be lodged before a witness testifies]; 1 McCormick on Evidence (7th ed. 2016) Competency, § 70 [same].)

We also agree with the trial court on the merits.

Judicial remedies are those administered by courts of justice. (Code Civ. Proc., § 20.) There are two kinds, actions and special proceedings. (*Id*., § 21.) Not surprisingly, "[a]n action is an *ordinary* proceeding in a court of justice" (*id*., § 22, italics added)see also and "[e]very other remedy is a *special* proceeding" (*id.*, § 23, italics added). Actions may be civil or criminal. (*Id*., § 24.) "A civil action is prosecuted by one party against another for the declaration, enforcement or protection of a right, or the redress or prevention of a wrong." (*Id*., § 30.) Civil actions arise out of obligations or injuries. (*Id*., §§ 25-29.) These statutes were part of the original Code of Civil Procedure adopted in 1872, with minor amendments. (See 1 Ann. Code Civ. Proc. (1st ed. 1874, Haymond & Burch commrs.-annotators) pp. 13-16.)

The administrative state as we now know it did not begin to rise in full flow until the New Deal. (See, e.g., Rabin, Federal Regulation in Historical Perspective (1986) 38 Stanford L.Rev. 1189.) The Board was not created until 1934, an outgrowth of populist reforms. (See *Pacific Legal Foundation v. Brown* (1981) 29 Cal.3d 168, 181-184 [describing the reasons leading to vesting the Board with constitutional protection via an initiative measure]; *Professional Engineers in Cal. Government v. State Personnel Bd.* (2001) 90 Cal.App.4th 678, 683-684.) It operates distinctly apart from ordinary civil law principles. An administrative hearing before the Board is neither a civil action nor a

10

special proceeding because it is not a judicial hearing, as contemplated by the sections of the Code of Civil Procedure just summarized.

In particular, a civil action is defined by statute as "an ordinary proceeding in a court of justice . . . ." (Code Civ. Proc., § 22.)  We have repeatedly rejected the view that an *administrative* proceeding is a form of civil action.  (See *Niles Freeman Equipment v. Joseph* (2008) 161 Cal.App.4th 765, 778-779; *Lomeli v. Department of Corrections* (2003) 108 Cal.App.4th 788, 796, *City of Oakland v. Public Employees' Retirement System* (2002) 95 Cal.App.4th 29, 48; see also *Gilliland v. Medical Board* (2001) 89 Cal.App.4th 208, 213-214; *Bold v. Board of Medical Examiners* (1933) 133 Cal.App. 23, 25.)

Because for purposes of the Evidence Code "civil action" includes "civil proceedings" (Evid. Code, § 105), the reasoning of the above settled authorities would apply to Evidence Code section 703.5, which speaks in terms of a "subsequent civil proceeding" rather than a "civil action."  (See also *id.*, § 300 ["Except as otherwise provided . . . this code applies in every action before the Supreme Court or a court of appeal or superior court"].)  If the Legislature wanted to encompass subsequent *administrative* proceedings within the evidentiary limitations provided by section 703.5, it would expressly so have provided, because we presume the Legislature is aware of the decisions cited above holding that administrative proceedings are not civil actions.  (See, e.g., *Estate of McDill* (1975) 14 Cal.3d 831, 839.)

Palmieri points to Evidence Code sections 901 and 902, which define the terms "proceeding" and "civil proceeding" expansively to include administrative hearings.  But those definitions are restricted in application to "this division" (*id.,* § 900), meaning Division 8, relating to privileges.  Those definitions do not apply to Evidence Code section 703.5, which is in Division 6, relating to witnesses.

Accordingly, we find no error in the admission of the ALJ testimony.

11

IV

*Penalty*

Palmieri's next heading in her brief is as follows: "The Superior Court Erred When it Found the Board did not Abuse its Discretion Regarding Appellant's Penalty." But her *argument* is that there was not sufficient evidence to show her dishonesty before ALJ Krestoff.[4] This conflicts with her earlier representation that she is not making any factual claims. It also violates the rule that arguments must be made under headings that fairly apprise this court of the nature of the claim, or they will be deemed forfeited. (See *Loranger v. Jones*, *supra*, 184 Cal.App.4th at p. 858, fn. 9.) Moreover, Palmieri fails to accurately describe the evidence against her in light of the proper standard of review. (See *Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881; see also *Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc*. (2011) 196 Cal.App.4th 456, 465 ["Failure to acknowledge the proper scope of review is a concession of a lack of merit"].) And although Palmieri describes purported problems with only one of the four counts, conceding the viability of the other three, she does not try to explain how a flaw in one count would undermine the penalty. (See *Thornbrough v. Western Placer Unified School Dist*. (2013) 223 Cal.App.4th 169, 193 [where one ground of discipline is shown an agency has wide latitude as to penalty and an appellant must explain prejudice].)

Regarding the Krestoff count, based on Palmieri's dishonesty, she merely reargues the weight of the evidence and draws inferences in derogation of the standard of review. She argues her false statement about a supervisor telling her she could take lunch was not

---

[4] In her reply brief, Palmieri does claim the penalty is "too harsh" *if* we discount Krestoff's testimony. This claim is forfeited because it comes too late (see *Utz v. Aureguy* (1952) 109 Cal.App.2d 803, 808) and because it lacks coherent analysis and authority (see *Ewald v. Nationstar Mortgage, LLC* (2017) 13 Cal.App.5th 947, 948). Further, Krestoff's testimony was cumulative of other evidence, including the transcript of the underlying hearing and the testimony of two other witnesses, all described *post*.

a statement of fact but merely her opinion, and challenges the Board's finding that she "firmly announced" that she could take a full hour for lunch according to her supervisor. She also claims the comment was made in jest. In support of these claims, she largely points to her own testimony but neither the ALJ nor the Board had to believe her: "Provided the trier of the facts does not act arbitrarily, he may reject *in toto* the testimony of a witness, even though the witness is uncontradicted." (*Hicks v. Reis* (1943) 21 Cal.2d 654, 659-660.)

Palmieri claims that absent a contemporaneous record of her comments there was no reliable way to determine what she said, and she claims she merely made a comment in jest. But we must draw all rational inferences in favor of the Board's decision. (See *Youth Authority*, *supra*, 104 Cal.App.4th at p. 584.) And there was ample evidence of Palmieri's dishonesty, as we now summarize.

At Palmieri's discipline hearing, while Krestoff was testifying, part of the audio recording of the underlying hearing was played. Krestoff had placed on the record that Palmieri had told him "her supervisor has instructed that she has the right to take a one-hour lunch regardless of the instruction of the [ALJ] to come back 20 minutes earlier." Palmieri then replied (on the record):

> "Well, I take exception to that. When we were -- we were not given an hour's lunch. We were inside the secured perimeter, and there was a delay getting out of there. And I walked out of there 20 minutes after 1:00. It's about 20 minutes after 2:00, and I think it's unreasonable to ask counsel to take less than an hour lunch when there's no place to eat around here that even allows to have lunch. So I apologize that you were delayed, but I think professional courtesy dictates the court allow at least an hour for lunch."

After this recording was played, Krestoff testified it accurately captured what had been said at the hearing. It shows that Palmieri did not dispute Krestoff's summary of what she had said about her supervisor. The Board could rationally infer from her failure to dispute it that Krestoff's contemporaneous summary was accurate.

13

And there was more. Gary Brehm also testified at Palmieri's disciplinary hearing. He was a sergeant and an employment relations officer at the prison where the hearing before ALJ Krestoff was held. He had perceived no ambiguity in Krestoff's order to return from lunch by 2:00 p.m., and nobody asked for clarification or for extra time. When Palmieri was late he left phone messages for her and then looked for her; when he found her and told her Krestoff was upset, Palmieri replied that he hadn't given enough time for lunch. Brehm testified that after Krestoff called her on her tardiness Palmieri said "[t]hat he didn't give us enough time for lunch, and indicated that -- *I believe it was her supervisors told her that she is an entitled to an hour's lunch* and that we were supposed to take care -- take an hour's lunch." (Italics added.) This corroborates Krestoff's statement on the record that Palmieri represented to him that her supervisor told her she could take an hour for lunch.[5]

Further, attorney Suzann Gostovich testified she had been present at the hearing and that when Krestoff questioned Palmieri "about her tardiness . . . she immediately became very defensive and argumentative with the Judge, and that's by saying that he didn't allow her a one-hour lunch and she was entitled to a one-hour lunch; *her supervisor has told her take a one-hour lunch*." (Italics added) When Krestoff asked Palmieri how a supervisor could overrule his scheduling order, Palmieri "repeated that her supervisor had instructed her; her supervisor had told her to take an hour lunch. She was very insistent that it was her supervisor's directive to take an hour lunch." Gostovich had prepared a contemporaneous report of what happened and it states Palmieri claimed "her supervisor has 'told' her to take" and hour for lunch and that she was " 'entitled' to an hour lunch."

---

**5** Palmieri claims Brehm was inconsistent about whether or not Krestoff was "irate," but that does not show all of his testimony was unreliable, as Palmieri asserts. The effect of any such inconsistency on a collateral point was for the Board to resolve. (See *Flowers v. State Personnel Bd.* (1985) 174 Cal.App.3d 753, 759.)

Palmieri has not shown error.

V

*State Bar Act*

Palmieri claims neither the Department nor the Board have the power to discipline her because she is an attorney. We agree with Palmieri that some of her conduct, such as misleading a quasi-judicial officer, may well present grounds for the State Bar to investigate her.[6] Her view is that the existence of the State Bar disciplinary system precludes her employer from disciplining her for actions while practicing law. But under her theory, no employer of an attorney could ever impose discipline for ethical lapses occurring during the practice of law. We reject this view.

Palmieri principally relies on *Baron v. City of Los Angeles* (1970) 2 Cal.3d 535. *Baron* involved a municipal ordinance requiring lobbyists to register. Baron, an attorney, sued on the ground that as applied to attorneys representing clients--that is, while engaged in the practice of law--the ordinance conflicted with the State Bar Act. *Baron* held that to the extent the local ordinance had the effect of *regulating the practice of law*, it implicated a matter of statewide concern and therefore was preempted by the State Bar Act. (*Baron*, at pp. 540-544.)

We agree with Palmieri that regulation of the practice of law is a matter within the State Bar's bailiwick, subject to approval by our Supreme Court which retains inherent authority over attorney discipline based on the separation of powers principle set forth in the California Constitution. (Cal. Const., art. III, § 3; see *In re Attorney Discipline System* (1998) 19 Cal.4th 582, 592-593, 598-603 [inherent authority of the Supreme Court over attorney discipline]; *Hustedt v. Workers' Comp. Appeals Bd.* (1981) 30 Cal.3d 329, 335-346 [invalidating a statute allowing administrative board to suspend an attorney

---

[6] The record does not show whether such an investigation has yet taken place.

15

from practicing law before that board]; Bus & Prof. Code, §§ 6067 [the rules of professional conduct are subject to Supreme Court approval], 6087 [the statutes regulating discipline do not supplant Supreme Court's powers], 6100 [the State Bar Act does not supplant Supreme Court's inherent authority over attorneys].)

But as we explained in Part II, *ante*, the Board's authority is *also* grounded in the California Constitution. (See Cal. Const., art. VII.) The Board did not limit Palmieri's ability to practice law, it disciplined her for lying to a quasi-judicial officer while she was representing a state agency. The proceedings were held under statutes implementing the constitutionally mandated state civil service system. The two statutory schemes serve different purposes and do not conflict in some way that insulates civil servant *attorneys* from Board discipline.[7] Indeed, the civil service scheme *protects* state civil service attorneys because normally a client has the unfettered right to fire an attorney, that is, with or without cause. (See *Fracasse v. Brent* (1972) 6 Cal.3d 784, 792; *Kroff v. Larson* (1985) 167 Cal.App.3d 857, 860.) Accepting Palmieri's claim would confer on attorneys a protected status in employment (one not logically limited to public employment) that would be antithetical to the nature of an ordinary attorney-client relationship.

Palmieri also argues that whether the Board can discipline state attorneys for misconduct during the practice of law is a *factual* question. She faults the ALJ, the Board, and the trial court for not crediting the testimony and written opinion of an expert in attorney discipline matters who opined that her claim was sound. But the effect of California statutes presents purely legal questions outside the province of expert

---

[7] This answers Palmieri's claim that the State Bar Act is the more specific statutory scheme because it is applicable only to lawyers. The civil service laws are applicable only to specified public employees, therefore neither scheme is more specific than the other because each addresses a different category of persons, although some people (like Palmieri) may fit into both categories and therefore potentially be subject to discipline under both bodies of law.

16

witnesses.  (See, e.g., *People v. Jo* (2017) 15 Cal.App.5th 1128, 1176.)  And this expert testified both that he was unaware of Article VII of the California Constitution governing the Board and that he had never represented attorneys in civil service cases.  His opinion, therefore, lacked an adequate foundation on this issue.

Accordingly, we reject Palmieri's claim that the Board lacks authority to discipline state civil service attorneys for misconduct that occurs during the practice of law.

## DISPOSITION

The judgment is affirmed.  The Department and the Board shall each receive their costs on appeal.  (See Cal. Rules of Court, rule 8. 278(a)(1).)


                                                     _____/s/_____
                                                   Duarte, Acting P.J.


We concur:


_____/s/_____
Hoch, J.


_____/s/_____
Renner, J.