Filed 10/30/24  Jackson v. Cal. State Personnel Board CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| QUINTON JACKSON,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>CALIFORNIA STATE PERSONNEL BOARD,<br><br>    Defendant and Respondent;<br><br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION,<br><br>    Real Party in Interest and Respondent. | D082160<br><br>(San Diego County<br>Super. Ct. No. 37-2022-00017639-CU-WM-CTL) |

APPEAL from an order of the Superior Court of San Diego County, Katherine A. Bacal, Judge.  Affirmed.

Castillo Harper, Montana L. Massone, and Brandi L. Harper for Plaintiff and Appellant.

No Appearance for Defendant and Respondent.

Rob Bonta, Attorney General, Chris A. Knudsen, Assistant Attorney General, Celine M. Cooper, and Paul Batcher, Deputy Attorneys General, for Real Party in Interest and Respondent.

Quinton Jackson appeals an order denying his petition for a writ of mandate, challenging the final administrative decision of the California State Personnel Board (Board), which resulted in the termination of Jackson's employment. Because we conclude substantial evidence supports the Board's findings and the Board did not abuse its discretion in determining that termination was appropriate, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

*The Incident*

Jackson began working in the California Department of Corrections and Rehabilitation (CDCR) as a correctional officer at the Richard J. Donovan Correctional Facility (Donovan) in 2006. In 2015, Jackson received an adverse action for failing to accurately report time worked and failing to cooperate during an investigative interview. However, he was promoted to Correctional Sergeant in 2016.

On December 25, 2019, Jackson was working as a supervisor on A yard at Donovan. Correctional Officers Lisa Terronez and Mario Real also were working on A yard. Around 3:00 p.m., Terronez received a radio call requesting that she call one of the housing units. Terronez and Real walked to a phone located under the observation tower for A yard so Terronez could make the call. As Terronez began dialing, Real, who was standing behind Terronez and watching the yard, observed a bucket being lowered from the observation tower. Observation tower officers routinely use buckets to lower equipment to officers on the yard, including replacement radio batteries. Seeing the bucket being lowered, Real asked Terronez if she had requested

2

batteries from the observation tower. Terronez turned around and both she and Real observed an inmate reach into the bucket, remove one or more candy canes from the bucket, pocket them, then turn and walk away.

Terronez immediately called Jackson, her supervisor that day, and reported that she had just seen an inmate take candy from a bucket lowered from the observation tower. Jackson told Terronez he would call the observation tower officer and find out what was going on. Jackson then called Correctional Officer Martin Rosalez, who was working in the observation tower. When Rosalez answered the phone, Jackson said, "Really? Really? Candy canes to inmates?" He then berated Rosalez and gave him a verbal reprimand. Jackson took no other immediate action with respect to Terronez's report of an inmate taking candy from the observation tower bucket. He did not document his verbal reprimand of Rosalez; he did not attempt to recover the contraband; he did not report the incident to the CDCR's Investigative Services Unit (ISU); and he did not report the incident to the watch commander.[1]

Around 4:00 p.m. on December 25, 2019, Correctional Officer Charles Hamilton, who was also working on A yard that day, overheard correctional officers commenting on the observation tower officer giving candy to inmates. A few minutes later, in one of the buildings on the yard, Hamilton heard Jackson tell a group of correctional officers that "What happens on Alpha Yard stays on Alpha Yard. Don't tell anybody about the candy cane issue.

---

[1]    A correctional officer giving unauthorized candy to an inmate is not minor misconduct. The correctional officer has violated the rules and potentially faces discipline. Once an inmate receives contraband of any sort from a staff member, he or she obtains a measure of leverage over that officer. The inmate can use this leverage to obtain further contraband or favors from the correctional officer, gaining additional control over the officer as the incidents of supplying contraband or providing favors accrue.

Let's not kick a man in the nuts." Hamilton reported the officers' comments and Jackson's statement to ISU on December 30, 2019, and subsequently prepared a memorandum at ISU's request.

ISU Sergeant Franklin Lewis contacted Jackson and requested that he prepare a memorandum. Jackson subsequently submitted a memorandum to ISU dated January 10, 2020. In the memorandum, Jackson did not state that Terronez reported to him that she had personally observed an inmate take candy from a bucket lowered from the observation tower. Rather, Jackson stated:

> "I received a phone call from Officer Terronez informing me that there was rumor amongst custody staff in regards to Officer Rosalez (Facility A Observation). The rumor was that Officer Rosalez was sending candy canes from Facility A Observation down to inmates."

The Office of Internal Affairs (Internal Affairs) subsequently interviewed Jackson as part of its administrative investigation. At the outset of the interview, the Internal Affairs special agent admonished Jackson that "[t]he truth is expected as is your entire knowledge relative to the items discussed." During a critical portion of the questioning, the special agent reiterated the importance that Jackson tell the truth.

The special agent asked Jackson what Terronez told him when she called him from the yard. Jackson stated that Terronez said she had heard a "rumor" that Rosalez was giving candy to inmates. In response to the special agent's subsequent questioning, Jackson confirmed that he only heard from Terronez that there was a rumor of candy being provided:

> "[Q.] And in your mind what did you—did you [¶] . . . [¶] was that your investigation?
>
> "[A.] In my—no. In my mind I thought I was—I was doing—I was doing a verbal. Okay. Because, once again, it

4

was something that—it wasn't—it wasn't saw by—at that point it was told to me that it was a rumor."

Subsequently, Jackson again confirmed that Terronez used the word "rumor."

"Q.  She used the word rumor?

"A.  Yes, the word rumor was specifically used."

The CDCR determined that Jackson's statements in his memorandum and his administrative interview were false because Terronez told Jackson unequivocally that she witnessed an inmate receiving candy from the observation tower bucket, rather than reporting a "rumor" that Rosalez was giving candy to inmates.

On December 9, 2020, the CDCR issued Jackson a notice of adverse action terminating his employment with the CDCR, effective December 31, 2020.  The adverse action was based on Jackson's dishonest statements in his January 10, 2020 memorandum and his Internal Affairs interview that Terronez had merely reported a rumor that Rosalez was giving candy to inmates, rather than that she had personally observed an inmate take candy from the observation tower bucket, as well as Jackson's failure to identify the inmate or recover the contraband, and his failure to adequately investigate, document, or report Terronez's report of misconduct.

*Jackson Challenges the Adverse Action*

Jackson filed an appeal with the Board on January 4, 2021, challenging his dismissal.  The Board held an evidentiary hearing on September 20, 2021.  Terronez, Real, Rosalez, Hamilton, and Jackson testified.  Terronez testified that she observed an inmate take candy from a bucket lowered from the observation tower and immediately called Jackson to tell him what she had seen.  Real likewise testified that Terronez told Jackson she had just seen an

5

inmate take candy from the observation tower bucket. Rosalez testified that Jackson immediately called him and gave him a verbal reprimand, and Hamilton testified about reporting the incident to ISU. In contrast, Jackson testified that Terronez told him only that she had heard a rumor about Rosalez giving candy to inmates.

The administrative law judge presiding over the hearing determined that Terronez was credible based on her demeanor and recollection of key details and because her testimony was logical and consistent with Real's testimony. The judge also found that she had no apparent motive to testify unfavorably to Jackson.

Additionally, the judge determined that Real was credible because his testimony was consistent with a memorandum he prepared shortly after the incident and because he had no apparent motive to testify falsely.

However, the judge found Jackson not credible based on his demeanor and because he was incorrect in some of his factual assertions, his testimony was inconsistent with his conduct, and he had a motive to mischaracterize Terronez's statement to excuse his failure to properly document or report the incident.

The Board adopted the judge's credibility determinations. Based on the evidence adduced at the hearing, the Board found Terronez told Jackson that Rosalez had lowered candy canes in a bucket to an inmate and that she did not say that she had merely heard a rumor about a correctional officer giving candy canes to inmates. The Board also found that Jackson had not reported the incident to ISU because Jerome Pickett, the ISU officer to whom Jackson purportedly made the report, was not working that day and Pickett seemed surprised when he heard about the incident from Hamilton.

The Board therefore concluded that Jackson was dishonest in his memorandum as well as his administrative interview and had failed to report Rosalez's conduct to ISU.  Based on these findings, the Board sustained the charges of inexcusable neglect of duty, dishonesty, willful disobedience, and other failures of good behavior.

The Board also upheld the penalty of dismissal.  The Board found that Jackson's conduct caused serious harm to the public service because his dishonesty impaired Internal Affair's ability to investigate the incident and peace officers like Jackson are held to the highest standards of behavior.  The Board also found that Jackson's conduct was likely to recur because he had previously received discipline for impeding an investigation, yet still made false statements during the subject investigation.

Jackson filed a petition for writ of mandate in San Diego Superior Court challenging the Board's decision.  Jackson insisted that the Board erred by not specifically analyzing whether Rosalez was more credible than Terronez and by concluding that Terronez and Real had no reason to testify falsely.  The court rejected these arguments and denied Jackson's petition for writ of mandate.

Jackson timely filed a notice of appeal.

DISCUSSION

A.  Jackson's Contentions

Jackson argues that the Board's findings are not based on substantial evidence.  Further, he asserts that the Board's termination of his employment constituted an abuse of discretion.  We are not persuaded.

B.  Standard of Review

On appeal from a judgment of the superior court denying a petition for writ of administrative mandamus, we "independently determine[ ] whether

7

substantial evidence supports the [Board's] findings, not the trial court's conclusions." (*Furtado v. State Personnel Bd.* (2013) 212 Cal.App.4th 729, 742.) " 'Substantial evidence' is relevant evidence that a reasonable mind might accept as adequate to support a conclusion.  [Citation.]  Such evidence must be reasonable, credible, and of solid value." (*California Youth Authority v. State Personnel Bd.* (2002) 104 Cal.App.4th 575, 584–585.)  In applying the substantial evidence test, " ' "[w]e do not reweigh the evidence; we indulge all presumptions and resolve all conflicts in favor of [the Board's] decision.  Its findings come before us 'with a strong presumption as to their correctness and regularity." ' " (*Palmieri v. State Personnel Bd.* (2018) 28 Cal.App.5th 845, 851 (*Palmieri*).)  Further, we do not "take into account evidence which detracts from the weight of other evidence . . . ." (*Flowers v. State Personnel Bd.* (1985) 174 Cal.App.3d 753, 758.)  Instead, we "examine all relevant evidence in the entire record, considering both the evidence that support's the Board's decision and the evidence against it, in order to determine whether that decision is supported by substantial evidence." (*Telish v. State Personnel Bd.* (2015) 234 Cal.App.4th 1479, 1487.)

" '[T]he determination of the penalty by the administrative body will not be disturbed unless there has been an abuse of its discretion.' " (*Skelly v. State Personnel Bd.* (1975) 15 Cal.3d 194, 217.)  " 'In reviewing the exercise of this discretion we bear in mind the principle "[c]ourts should let administrative boards and officers work out their problems with as little judicial interference as possible . . . .  . . . In determining whether an agency abused its discretion in assessing a particular penalty, a court will look to 'whether reasonable minds may differ as to the propriety of a penalty imposed.' [Citations.]  Judicial interference with the agency's assessment of a penalty 'will only be sanctioned when there is an arbitrary, capricious or

patently abusive exercise of discretion by the administrative agency.' " (*Kazensky v. City of Merced* (1998) 65 Cal.App.4th 44, 54.)  "Neither an appellate court nor a trial court is free to substitute its discretion for that of the administrative agency concerning the degree of punishment imposed." (*Fout v. State Personnel Bd.* (1982) 136 Cal.App.3d 817, 821.)  On the other hand, we give no deference to the trial court's determination of whether the Board abused its discretion.  (*Pollak v. State Personnel Bd.* (2001) 88 Cal.App.4th 1394, 1404.)

### C.  Analysis

Jackson contends that the Board's findings are not supported by substantial evidence.  Thus, he was obligated to set forth in his opening brief all the material evidence on the point, not merely his own evidence. (*Boeken v. Philip Morris, Inc.* (2005) 127 Cal.App.4th 1640, 1657–1659.) Further, he was required to present the facts in the light most favorable to the judgment.  (*Id.* at pp. 1657–1658; see Cal. Rules of Court, rule 8.204(a)(2)(C).)  Jackson's opening brief did not comply with these conditions.

Jackson's failure to cite all of the evidence favorable to the judgment, as is required, is fatal to his substantial evidence challenge.  (*Sanchez v. Martinez* (2020) 54 Cal.App.5th 535, 548 [in citing only evidence in his favor, appellant forfeited his substantial evidence argument].)  "[W]hen a losing party challenges the verdict for a lack of substantial evidence, they 'must set forth, discuss, and analyze all the evidence on [the pertinent] point[s], both favorable and unfavorable.' [Citations.]  Appellants' 'fundamental obligation to this court, and a prerequisite to our consideration of their challenge' [citation] is to 'set forth the version of events most favorable to [respondent]' [citation].  'Accordingly, if . . . 'some particular issue of fact is not sustained,

9

they are required to set forth in their brief all the material evidence on the point and not merely their own evidence. Unless this is done the error is deemed to be waived.' " (*Pope v. Babick* (2014) 229 Cal.App.4th 1238, 1246; accord, *Doe v. Roman Catholic Archbishop of Cashel & Emly* (2009) 177 Cal.App.4th 209, 218.) Here, Jackson fails to discuss the relevant material evidence, resulting in a forfeiture of his contention of insufficient evidence.

Further, even if we did not find forfeiture, we nonetheless would determine that Jackson's substantial evidence challenge is without merit. On appeal, Jackson attacks the credibility of Terronez and Real. To this end, he claims (1) the Board failed to consider "material evidence impacting witness credibility" and (2) there was a lack of evidence supporting the witnesses' claims.

Regarding credibility determinations made by the Board, we are guided by Government Code section 11425.50, subdivision (b), which provides:

> "If the factual basis for the decision includes a determination based substantially on the credibility of a witness, the statement [of the factual basis for the decision] shall identify any specific evidence of the observed demeanor, manner, or attitude of the witness that supports the determination, and on judicial review the court shall give great weight to the determination to the extent the determination identifies the observed demeanor, manner, or attitude of the witness that supports it."

Here, the Board found Terronez and Real credible. Terronez testified that she personally witnessed an inmate take candy from the bucket lowered from the observation tower and informed Jackson of that activity. Real, who was with Terronez at the time, corroborated Terronez's version of events.

In addition, Terronez's and Real's testimony was buttressed by Rosalez's testimony. Rosalez testified that he lowered candy canes down to

10

the yard in the bucket along with batteries with the intention of providing officers in the yard with both items. When he pulled the bucket up, the candy canes were gone. Rosalez further testified that Jackson called him shortly thereafter, chastised him, and hung up. Rosalez's description of his conversation with Jackson is consistent with Terronez's testimony that she reported to Jackson that she had seen an inmate take candy from the observation tower bucket. If Jackson was merely informed of a rumor that candy had been provided to inmates, it begs the question why he would have called Rosalez and yelled at him.

Moreover, Jackson's own testimony supports the credibility of Terronez and Real. Jackson admitted that immediately after Terronez called him, he called Rosalez. At that point, he had not investigated the incident. Jackson acknowledged that Rosalez never confirmed whether he gave candy to inmates. Nevertheless, Jackson testified that he gave Rosalez a verbal reprimand that should have been formally documented.

Jackson's conduct after the incident as documented by Hamilton also supports Terronez's and Real's credibility. According to Hamilton, Jackson told staff on the yard that, "What happens on Alpha Yard stays on Alpha Yard. Don't tell anybody about the candy cane issue. Let's not kick a man in the nuts." There would be no need for Jackson to make this statement if he had only been informed of a rumor that candy had been provided to the inmates. Instead, Jackson's statement is consistent with Jackson having received a report of an inmate taking candy from a bucket lowered from the observation tower.

The only evidence that contradicted Terronez's version of events was Jackson's own testimony. But the Board heard the conflicting testimony, weighed the evidence, and decided the issue against Jackson. Moreover, the

11

Board's order identified the specific evidence of the demeanor, manner, and attitude of both Jackson and Terronez that supported the credibility determination. For example, the order indicated that the judge found that Jackson testified in a calm manner and that his testimony was largely consistent with his prior statements. Yet, Jackson was sometimes hesitant, wary, or evasive, even when asked routine questions about CDCR policies. And the judge determined that Jackson's testimony was inconsistent with other witnesses' testimony as well as his own conduct, that Jackson was wrong when he said that he contacted Pickett the same day, and that Jackson had motive to testify falsely to justify his failure to properly investigate, document, and report the incident.

Regarding Terronez, the judge found that although Terronez sometimes paused during her testimony and did not recall some precise details, she testified in a calm manner, demonstrated a good recollection of the essential events, and testified consistently with her prior statements. Additionally, the judge concluded that Terronez's testimony was internally consistent, made sense, and was in harmony with Real's testimony. Finally, the judge observed that Terronez had no motive to lie.

Because the Board's order included the observed demeanor, manner, and attitude of the witnesses, we give "great weight" to the Board's credibility determination. (Gov. Code, § 11425.50, subd. (b).) And none of Jackson's additional arguments give us pause in following Government Code section 11425.50.

For example, Jackson challenges the Board's conclusion that Terronez had no reason to lie, arguing that she (as well as Real) lied to "remove their culpability in the alleged incident." Thus, he claims that if Terronez witnessed an inmate take a candy cane from the bucket, she should have

12

apprehended the inmate, recovered the candy, and documented the incident. We agree with the CDCR that this argument is "pure speculation." First, Jackson's statement is inconsistent with his claim that Terronez only heard a rumor. Second, Terronez explained why she did not attempt to apprehend the inmate. She was not sure if the candy was contraband or permitted because it was Christmas Day. Accordingly, she called her supervisor (Jackson) to report it. This was a reasonable response to observing an inmate taking a candy cane out of the bucket considering all circumstances.

Jackson also contends the Board should not have credited Terronez's testimony because she had received a prior adverse action for dishonesty. We disagree.

In January 2021 (after the events at issue here), Terronez received a notice of adverse action that included a charge of dishonesty. Terronez and the CDCR subsequently entered into a settlement agreement that removed the dishonesty charge from the adverse action. The Board considered these facts, and concluded that, "[t]he fact that . . . Terronez's initial [Notice of Adverse Action] charged her with dishonesty should not render her testimony unreliable." A factfinder is not obligated to disregard a witness's testimony simply because there is evidence the witness had been dishonest in the past. Instead, prior dishonesty is simply one fact the factfinder may consider when weighing a witness's testimony. (See Evid. Code, § 780 [providing that, "the court or jury may consider . . . [¶] . . . [¶] . . . [h]is character for honesty or veracity or their opposites" in determining the credibility of a witness].)

Terronez's adverse action settled, and there was no finding of dishonesty. Moreover, in this case, her testimony was consistent with that of her partner and Jackson's own actions toward Rosalez. The Board appropriately considered all the factors pertaining to credibility, including

13

Terronez's prior notice of adverse action, and found her to be credible. It is not our role to reweigh the evidence. (See *Palmieri*, *supra*, 28 Cal.App.5th at p. 851.)

Thus, on the record before us, we conclude the Board's findings are supported by substantial evidence.

Having concluded that the Board's findings are supported by substantial evidence, we turn to Jackson's contention that the Board abused its discretion in terminating his employment. The overriding consideration when considering what penalty to impose is the extent to which the employee's conduct resulted in, or if repeated is likely to result in, harm to the public service. (*Cate v. State Personnel Bd.* (2012) 204 Cal.App.4th 270, 284–285 (*Cate*).) Peace officers are held to higher standards of conduct than civilian employees. (*Id.* at p. 285.) Specifically, dishonesty by law enforcement personnel is treated severely. (*Ibid.*; see *Ackerman v. State Personnel Bd.* (1983) 145 Cal.App.3d 395, 400.) And several cases have held that a peace officer's dishonesty warrants dismissal. (See *Cate*, at pp. 285–286; *Kolender v. San Diego County Civil Service Com.* (2005) 132 Cal.App.4th 716, 721–722 (*Kolender*); *Paulino v. Civil Service Com.* (1985) 175 Cal.App.3d 962, 970–972.)

Here, the Board determined that Jackson's misconduct warranted dismissal because his dishonesty impaired the CDCR's ability to investigate the incident and, as a peace officer, his dishonesty caused particular harm to the public service. Honesty is essential to a law enforcement officer's duties. (*Kolender*, *supra*, 132 Cal.App.4th at p. 721.) The evidence established that Jackson lied in his memorandum to ISU and lied again during his administrative interview where he was specifically instructed to tell the truth during the interview. Moreover, he received an adverse action in 2015 in

14

part for failing to cooperate during an investigative interview. Additionally, the seriousness of Jackson's dishonesty was underscored by the Board's finding that he would be dishonest in the future. (See *Cate, supra*, 204 Cal.App.4th at pp. 284–285.) Consequently, the Board did not abuse its discretion by determining that Jackson's dishonesty betrayed the public trust and warranted his termination. (See *Kolender*, at p. 721.)

DISPOSITION

The order is affirmed. The CDCR is entitled to its costs on appeal.


HUFFMAN, Acting P. J.

WE CONCUR:


DO, J.


RUBIN, J.

15